Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the

Eastern District of Virginia

Norfolk Division

|  | )  |
|---|---|
|  | ) Case No. 2:23 cv 390 |
| TYLER PARKER | ) *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) Jury Trial: *(check one)* ☑ Yes ☐ No |
| -v- | ) |
| Anthony Duncan Trading For ABNB Federal Credit Union | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) |

## COMPLAINT FOR A CIVIL CASE

### I.   The Parties to This Complaint

####   A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| Name | TYLER PARKER |
|---|---|
| Street Address | 4418 Giannon Road |
| City and County | City of Portsmouth |
| State and Zip Code | Virginia , 23703 |
| Telephone Number | 757-705-0237 |
| E-mail Address | tjpi998.tp@gmail.com |

####   B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

    Name                        Anthony Dunean Trading for
                                   ABNB Federal Credit Union

    Job or Title *(if known)*

    Street Address              830 Greenbrier Circle

    City and County          Chesapeake

    State and Zip Code      Virginia , 23320

    Telephone Number      757-523-5300

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

· Federal Reserve Act section 16 Application for Notes
· Breach of contract  · Breach of Fiduciary Duty

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*    TYLER PARKER    , is a citizen of the State of *(name)*    Virginia    .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

b.    If the defendant is a corporation

The defendant, *(name)* ABNB Federal Credit Union is incorporated under

the laws of the State of *(name)* Virginia , and has its

principal place of business in the State of *(name)* Virginia .

Or is incorporated under the laws of *(foreign nation)* Federal Reserve.

and has its principal place of business in *(name)* Virginia .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

Principal TYLER PARKER made an advance payment to Federal reserve Bank through Anthony Duncan Federal Reserve Agent. 22,155.02 twenty-two thousand one hundred fifty-five and 02/100 dollars—

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Principal TYLER PARKER is entitled Interest Equity in account ending in #1697 at ABNB Federal Credit Union. Registered with ABNB FCU chief Financial Officer Anthony Duncan Promissing a payment or performance that has been performed to Anthony Duncan but has not received notice performance has been applied. Principal TYLER PARKER received a bill with a positive balance to exchange to ABNB Fiscal Officer Anthony Duncan.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Civil Money Penalties Federal Reserve Act Section 29.limit to not exceed a million dollars or 1% of ABNB FCU each day violations for Breach of Fiduciary duty Continues. In God We Trust. Holding the promissory note titled retail installment Sale Contract Evidences ABNBFCU was given authorization by Principal TYLER PARKER to be assigned exercising powers when authorized necessary. Showing Property (Equity) from Principal TYLER PARKER giving advances before value given.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    July 25, 2023

Signature of Plaintiff    Parker Tyler - James / Agent

Printed Name of Plaintiff    TYLER PARKER

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Print    Save As...    Add Attachment    Reset

August 7, 2023

United States District Court For the Eastern District of Virginia

Plaintiff - TYLER PARKER
Defendant – Anthony Duncan trading for ABNB Federal Credit Union

Introduction to claim  -  Anthony Duncan/agent of ABNB Federal Credit Union promised to administrate Principal TYLER PARKER account with a duty of care receiving application as collateral. Following the federal reserve act and it referencing bill of exchange this claim is acting on Breach of Contract of Fiduciary Duties by Anthony Duncan Chief Financial Officer of ABNB Federal Credit Union referencing the federal reserve act, bill of exchange act, promissory note titled retail instrument contract negotiable instruments.

Claim  - Titles Rights Interest and Equity owed to Principal TYLER PARKER in a secured account ending in #6637 managed by Fiduciary Anthony Duncan Chief Financial Officer of ABNB Federal Credit Union. Parker;Tyler-James/agent on behalf of Principal TYLER PARKER is instructing Anthony Duncan Chief Financial Officer of ABNB Federal Credit Union to apply TYLER PARKER Principal Balance to TYLER PARKER Principal account ending in #6637.

Performance  - Federal Reserve Agent Anthony Duncan received a tender and negotiable instruments for TYLER PARKER as the bearer for deposit on demand, with a promissory note titled retail installment contract evidences account ending in #6637 is the particular account to be accredited with Principal TYLER PARKER Interest Equity and a Fiduciary Duty to apply the credit from Anthony Duncan after receiving TYLER PARKER endorsement to setoff.

Damages  - Bringing forth a letter from William Bane Vice President of Internal Audit at ABNB Federal Credit Union assuming he is following Anthony Duncan/Administrator orders written to intentionally extort Principal TYLER PARKER out of his Titles Rights Interest Equity Instructing Principal TYLER PARKER to "remain obligated to repay the vehicle loan" "The credit union will not pay you for the balance of your loan" Directly Damaging Principal TYLER PARKER account ending in #6637 each day Principal TYLER PARKER Interest is not applied as Instructed on promissory note.

Relief  - Referencing Federal Reserve Act Section 29, each day Anthony Duncan trading for ABNB Federal Credit Union knowingly commits violations administrating Principal TYLER PARKER account Anthony Duncan shall forfeit and pay a civil money penalty of one million or one percent of ABNB Federal Credit Union total assets.

Conclusion  - As we the people proceed in good faith. The Trust of the people in God was declared, as United States proclaimed its Trust In God publicly on currency. No Nation can be strong except in the strength of God.

FOR: TYLER PARKER

By: Parker; Tyler-James/Agent

# DURABLE FINANCIAL POWER OF ATTORNEY

I, TYLER PARKER of 4418 Gannon Road, Portsmouth, Virginia, 23703 (hereinafter known as the "Principal"), **HEREBY DESIGNATE** Tyler Parker of 4418 Gannon Road, Portsmouth, Virginia, 23703, (hereinafter known as the "Agent"), to act as the Agent for the Principal's benefit, and shall exercise powers in the Principal's best interest and general welfare, as a fiduciary.

## <u>APPOINTMENT OF ALTERNATE AGENT</u>

There shall be no other individuals authorized to make financial decisions on the Principal's behalf.

## THE PRINCIPAL DELEGATES THE FOLLOWING POWERS TO THE AGENT

(The Principal must **<u>Initial</u>** in the preceding space to all the powers (**IN BOLD**) if either granted or negated)

_____  **BANKING** - In regards to banking activities, the Principal authorizes the Agent to:

Continue, modify, and terminate an account or other banking arrangement made by or on behalf of the Principal;

Establish, modify, and terminate an account or other banking arrangement with a bank, trust company, savings and loan association, credit union, thrift company, brokerage firm, or other financial institution selected by the Agent;

Contract for services available from a financial institution, including renting a safe deposit box or space in a vault;

Withdraw, by check, order, electronic funds transfer, or otherwise, money or property of the Principal deposited with or left in the custody of a financial institution;

Receive statements of account, vouchers, notices, and similar documents from a financial institution and act with respect to them;

Enter a safe deposit box or vault and withdraw or add to the contents;

Borrow money and pledge as security personal property of the Principal necessary to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;

Make, assign, draw, endorse, discount, guarantee, and negotiate promissory notes, checks, drafts, and other negotiable or nonnegotiable paper of the Principal or payable to the Principal or the Principal's order, transfer money, receive the cash or other proceeds of those transactions, and accept a draft drawn by a person upon the Principal and pay it when due;

Receive for the Principal and act upon a sight draft, warehouse receipt, or other document of title whether tangible or electronic, or other negotiable or nonnegotiable instrument;

Apply for, receive, and use letters of credit, credit and debit cards, electronic transaction authorizations, and traveler's checks from a financial institution and give an indemnity or other agreement in connection with letters of credit; and

Consent to an extension of the time of payment with respect to commercial paper or a financial

**BUSINESS INTEREST** - In regards to business-related activities, the Principal authorizes the Agent to:

Operate, buy, sell, enlarge, reduce, or terminate an ownership interest;

Perform a duty or discharge a liability and exercise in person or by proxy a right, power, privilege, or option that the Principal has, may have, or claims to have;

Enforce the terms of an ownership agreement;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to which the Principal is a party because of an ownership interest;

Exercise in person or by proxy, or enforce by litigation or otherwise, a right, power, privilege, or option the Principal has or claims to have as the holder of stocks and bonds;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to which the Principal is a party concerning stocks and bonds;

With respect to an entity or business owned solely by the Principal:

    i. Continue, modify, renegotiate, extend, and terminate a contract made by or on behalf of the Principal with respect to the entity or business before execution of the power of attorney;
    ii. determine:
        a. The location of its operation;
        b. The nature and extent of its business;
        c. The methods of manufacturing, selling, merchandising, financing, accounting, and advertising employed in its operation;
        d. The amount and types of insurance carried; and
        e. The mode of engaging, compensating, and dealing with its employees and accountants, attorneys, or other advisors;

Change the name or form of organization under which the entity or business is operated and enter into an ownership agreement with other persons to take over all or part of the operation of the entity or business; and

Demand and receive money due or claimed by the Principal or on the Principal's behalf in the operation of the entity or business and control and disburse the money in the operation of the entity or business;

Put additional capital into an entity or business in which the Principal has an interest;

Join in a plan of reorganization, consolidation, conversion, domestication, or merger of the entity or business;

Sell or liquidate all or part of an entity or business;

Establish the value of an entity or business under a buy-out agreement to which the Principal is a party;

Prepare, sign, file, and deliver reports, compilations of information, returns, or other papers with respect to an entity or business and make related payments; and

Pay, compromise, or contest taxes, assessments, fines, or penalties and perform any other act to protect the Principal from illegal or unnecessary taxation, assessments, fines, or penalties, with respect to an entity or business, including attempts to recover, in any manner permitted by law, money paid before or after the execution of the power of attorney.

**SAFE DEPOSIT BOX** - The Principal authorizes the Agent to have access, at anytime, to any safe-deposit box rented by the Principal or to which (s)he may have access, wheresoever located,

including drilling, if necessary, and to remove all or any part of the contents thereof, and to surrender or relinquish said safe-deposit box; and any institution in which any such safe-deposit box may be located shall not incur any liability the Principal or their estate as a result of permitting the Agent to exercise this power.

**STOCKS AND BONDS** - In regards to stocks and bonds, the Principal authorizes the Agent to:

Buy, sell, and exchange stocks and bonds;

Establish, continue, modify, or terminate an account with respect to stocks and bonds;

Pledge stocks and bonds as security to borrow, pay, renew, or extend the time of payment of a debt of the Principal;

Receive certificates and other evidences of ownership with respect to stocks and bonds; and

Exercise voting rights with respect to stocks and bonds in person or by proxy, enter into voting trusts, and consent to limitations on the right to vote.

**COMMODITIES AND OPTIONS** - In regards to commodities and options, the Principal authorizes the Agent to buy, sell, exchange, assign, settle, and exercise commodity futures contracts and call or put options on stocks or stock indexes traded on a regulated option exchange; and establish, continue, modify, and terminate option accounts.

**CLAIMS AND LITIGATION** - In regards to claims and litigation, the Principal authorizes the Agent to:

Assert and maintain before a court or administrative agency a claim, claim for relief, cause of action, counterclaim, offset, recoupment, or defense, including an action to recover property or other thing of value, recover damages sustained by the Principal, eliminate or modify tax liability, or seek an injunction, specific performance, or other relief;

Bring an action to determine adverse claims or intervene or otherwise participate in litigation;

Seek an attachment, garnishment, order of arrest, or other preliminary, provisional, or intermediate relief and use an available procedure to effect or satisfy a judgment, order, or decree;

Make or accept a tender, offer of judgment, or admission of facts, submit a controversy on an agreed statement of facts, consent to examination, and bind the Principal in litigation;

Submit to alternative dispute resolution, settle, and propose or accept a compromise;

Waive the issuance and service of process upon the Principal, accept service of process, appear for the Principal, designate persons upon which process directed to the Principal may be served, execute and file or deliver stipulations on the Principal's behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, receive, execute, and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation;

Act for the Principal with respect to bankruptcy or insolvency, whether voluntary or involuntary, concerning the Principal or some other person, or with respect to a reorganization, receivership, or application for the appointment of a receiver or trustee which affects an interest of the Principal in property or other thing of value;

Pay a judgment, award, or order against the Principal or a settlement made in connection with a claim or litigation; and

Receive money or other thing of value paid in settlement of or as proceeds of a claim or litigation.

**LENDING & BORROWING** - In regards to loans, borrowing money, and promissory notes: the Principal authorizes the Agent to make loans in the Principal's name; to borrow money in the Principal's name, individually or jointly with others; to give promissory notes or other obligations therefor; and to deposit or mortgage as collateral or for security for the payment thereof any or all of the Principal's securities, real estate, personal property, or other property of whatever nature and wherever situated, held by the Principal personally or in trust for their benefit.

**GOVERNMENT BENEFITS** - In regards to Government benefits, the Principal authorizes the Agent to:

Execute vouchers in the name of the Principal for allowances and reimbursements payable by the United States or a foreign government or by a state or subdivision of a state to the Principal, including allowances and reimbursements for transportation of individuals considered relatives or family, and for shipment of their household effects;

Take possession and order the removal and shipment of property of the Principal from a post, warehouse, depot, dock, or other place of storage or safekeeping, either governmental or private, and execute and deliver a release, voucher, receipt, bill of lading, shipping ticket, certificate, or other instrument for that purpose;

Enroll in, apply for, select, reject, change, amend, or discontinue, on the Principal's behalf, a benefit or program not limited but including Social Security, Medicare, Medicaid, and any Military Benefits;

Prepare, file, and maintain a claim of the Principal for a benefit or assistance, financial or otherwise, to which the Principal may be entitled under a statute or regulation;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation concerning any benefit or assistance the Principal may be entitled to receive under a statute or regulation; and

Receive the financial proceeds of a claim described in this section and conserve, invest, disburse, or use for a lawful purpose anything so received.

**RETIREMENT PLANS** - The Principal authorizes the Agent authority over retirement plans defined as:

A plan or account created by an employer, the Principal, or another individual to provide retirement benefits or deferred compensation of which the Principal is a participant, beneficiary, or owner, including a plan or account under the following sections of the Internal Revenue Code:

An individual retirement account under Internal Revenue Code Section 408, 26 U.S.C. Section 408, as amended;

A Roth individual retirement account under Internal Revenue Code Section 408A, 26 U.S.C. Section 408A, as amended;

A deemed individual retirement account under Internal Revenue Code Section 408(q), 26 U.S.C. Section 408(q), as amended;

An annuity or mutual fund custodial account under Internal Revenue Code Section 403(b), 26 U.S.C. Section 403(b), as amended;

A pension, profit-sharing, stock bonus, or other retirement plan qualified under Internal Revenue Code Section 401(a), 26 U.S.C. Section 401(a), as amended;

A plan under Internal Revenue Code Section 457(b), 26 U.S.C. Section 457(b), as amended; and

A non-qualified deferred compensation plan under Internal Revenue Code Section 409A, 26 U.S.C. Section 409A, as amended.

Unless the power of attorney otherwise provides, language in a power of attorney granting general authority with respect to retirement plans authorizes the Agent to:

> i. Select the form and timing of payments under a retirement plan and withdraw benefits from a plan;
> ii. Make a rollover, including a direct trustee-to-trustee rollover, of benefits from one retirement plan to another;
> iii. Establish a retirement plan in the Principal's name;
> iv. Make contributions to a retirement plan;
> v. Exercise investment powers available under a retirement plan; and borrow from, sell assets to, or purchase assets from a retirement plan.

**TAXES** - In regards to taxes, the Principal authorizes the Agent to:

Prepare, sign, and file federal, state, local, and foreign income, gift, payroll, property, Federal Insurance Contributions Act, and other tax returns, claims for refunds, requests for extension of time, petitions regarding tax matters, and any other tax-related documents, including receipts, offers, waivers, consents, including consents and agreements under Internal Revenue Code Section 2032A, 26 U.S.C. Section 2032A, as amended, closing agreements, and any power of attorney required by the Internal Revenue Service or other taxing authority with respect to a tax year upon which the statute of limitations has not run and the following 25 tax years;

Pay taxes due, collect refunds, post bonds, receive confidential information, and contest deficiencies determined by the Internal Revenue Service or other taxing authority;

Exercise any election available to the Principal under federal, state, local, or foreign tax law; and

Act for the Principal in all tax matters for all periods before the Internal Revenue Service, or other taxing authority.

**INSURANCE AND ANNUITIES** - In regards to insurance policies and annuities, the Principal authorizes the Agent to:

Continue, pay the premium or make a contribution on, modify, exchange, rescind, release, or terminate a contract procured by or on behalf of the Principal which insures or provides an annuity to either the Principal or another person, whether or not the Principal is a beneficiary under the contract;

Procure new, different, and additional contracts of insurance and annuities for the Principal and the Principal's spouse, children, and other dependents, and select the amount, type of insurance or annuity, and mode of payment;

Pay the premium or make a contribution on, modify, exchange, rescind, release, or terminate a contract of insurance or annuity procured by the Agent;

Apply for and receive a loan secured by a contract of insurance or annuity;

Surrender and receive the cash surrender value on a contract of insurance or annuity;

Exercise an election;

Exercise investment powers available under a contract of insurance or annuity;

Change the manner of paying premiums on a contract of insurance or annuity;

Change or convert the type of insurance or annuity with respect to which the Principal has or claims to have authority described in this section;

Apply for and procure a benefit or assistance under a statute or regulation to guarantee or pay premiums of a contract of insurance on the life of the Principal;

Collect, sell, assign, hypothecate, borrow against, or pledge the interest of the Principal in a contract of insurance or annuity;

Select the form and timing of the payment of proceeds from a contract of insurance or annuity; and

Pay, from proceeds or otherwise, compromise or contest, and apply for refunds in connection with, a tax or assessment levied by a taxing authority with respect to a contract of insurance or annuity or its proceeds or liability accruing by reason of the tax or assessment.

**ESTATES, TRUSTS, AND OTHER BENEFICIAL INTERESTS** - In regards to the Principal's Estates, Trusts, and other Beneficial Interests, the Principal authorizes the Agent to have general authority with respect to estates, trusts, and other beneficial interests to:

Accept, receive, receipt for, sell, assign, pledge, or exchange a share in or payment from the fund;

Demand or obtain money or another thing of value to which the Principal is, may become, or claims to be, entitled by reason of the fund, by litigation or otherwise;

Exercise for the benefit of the Principal a presently exercisable general power of appointment held by the Principal;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to ascertain the meaning, validity, or effect of a deed, will, declaration of trust, or other instrument or transaction affecting the interest of the Principal;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to remove, substitute, or surcharge a fiduciary;

Conserve, invest, disburse, or use anything received for an authorized purpose;

Transfer an interest of the Principal in real property, stocks and bonds, accounts with financial institutions or securities intermediaries, insurance, annuities, and other property to the trustee of a revocable trust created by the Principal as settlor; and

Reject, renounce, disclaim, release, or consent to a reduction in or modification of a share in or payment from the fund.

**REAL ESTATE** - In regards to real estate, The Principal authorizes the Agent to:

Demand, buy, lease, receive, accept as a gift or as security for an extension of credit, or otherwise acquire or reject an interest in real property or a right incident to real property;

Sell; exchange; convey with or without covenants, representations, or warranties; quitclaim; release; surrender; retain title for security; encumber; partition; consent to partitioning; subject to an easement or covenant; subdivide; apply for zoning or other governmental permits; plat or consent to platting; develop; grant an option concerning; lease; sublease; contribute to an entity in exchange for an interest in that entity; or otherwise grant or dispose of an interest in real property or a right incident to real property;

Pledge or mortgage an interest in real property or right incident to real property as security to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;

Release, assign, satisfy, or enforce by litigation or otherwise a mortgage, deed of trust, conditional sale contract, encumbrance, lien, or other claim to real property which exists or is asserted;

  i. Manage or conserve an interest in real property or a right incident to real property owned or claimed to be owned by the Principal, including:
  ii. Insuring against liability or casualty or other loss;

otherwise;
iv. Paying, assessing, compromising, or contesting taxes or assessments or applying for and receiving refunds in connection with them; and
v. Purchasing supplies, hiring assistance or labor, and making repairs or alterations to the real property;

Use, develop, alter, replace, remove, erect, or install structures or other improvements upon real property in or incident to which the Principal has, or claims to have, an interest or right;

Participate in a reorganization with respect to real property or an entity that owns an interest in or right incident to real property and receive, and hold, and act with respect to stocks and bonds or other property received in a plan of reorganization, including:

i. Selling or otherwise disposing of them;
ii. Exercising or selling an option, right of conversion, or similar right with respect to them; and
iii. exercising any voting rights in person or by proxy;
iv. change the form of title of an interest in or right incident to real property; and

Dedicate to public use, with or without consideration, easements or other real property in which the Principal has, or claims to have, an interest.

**PERSONAL PROPERTY** - In regards to personal property, the Principal authorizes the Agent to:
Demand, buy, receive, accept as a gift or as security for an extension of credit, or otherwise acquire or reject ownership or possession of tangible personal property or an interest in tangible personal property;

Sell; exchange; convey with or without covenants, representations, or warranties; quitclaim; release; surrender; create a security interest in; grant options concerning; lease; sublease; or, otherwise dispose of tangible personal property or an interest in tangible personal property;

Grant a security interest in tangible personal property or an interest in tangible personal property as security to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;

Release, assign, satisfy, or enforce by litigation or otherwise, a security interest, lien, or other claim on behalf of the Principal, with respect to tangible personal property or an interest in tangible personal property;

Manage or conserve tangible personal property or an interest in tangible personal property on behalf of the Principal, including:

i. Insuring against liability or casualty or other loss;
ii. Obtaining or regaining possession of or protecting the property or interest, by litigation or otherwise;
iii. Paying, assessing, compromising, or contesting taxes or assessments or applying for and receiving refunds in connection with taxes or assessments;
iv. Moving the property from place to place;
v. Storing the property for hire or on a gratuitous bailment; and
vi. Using and making repairs, alterations, or improvements to the property; and

Change the form of title of an interest in tangible personal property.

**PERSONAL & FAMILY MAINTENANCE** - In regards to personal and family maintenance, the Principal authorizes the Agent to:
I. Perform the acts necessary to maintain the customary standard of living of the Principal, the Principal's spouse, and the following individuals, whether living when the power of attorney is executed or later born:
i. The Principal's children;
ii. Other individuals legally entitled to be supported by the Principal; and
iii. The individuals whom the Principal has customarily supported or indicated the intent to support;

II. Make periodic payments of child support and other family maintenance required by a court or governmental agency or an agreement to which the Principal is a party;

III. Provide living quarters for the individuals described in section I by:

      i. Purchase, lease, or other contract; or
      ii. Paying the operating costs, including interest, amortization payments, repairs, improvements, and taxes, for premises owned by the Principal or occupied by those individuals;

IV. Provide normal domestic help, usual vacations and travel expenses, and funds for shelter, clothing, food, appropriate education, including postsecondary and vocational education, and other current living costs for the individuals described in section I;

V. Pay expenses for necessary health care and custodial care on behalf of the individuals described in section I;

VI. Act as the Principal's personal representative pursuant to the Health Insurance Portability and Accountability Act, Sections 1171 through 1179 of the Social Security Act, 42 U.S.C. Section 1320d, as amended, and applicable regulations, in making decisions related to the past, present, or future payment for the provision of health care consented to by the Principal or anyone authorized under the law of this state to consent to health care on behalf of the Principal;

VII. Continue any provision made by the Principal for automobiles or other means of transportation, including registering, licensing, insuring, and replacing them, for the individuals described in section I;

VIII. maintain credit and debit accounts for the convenience of the individuals described in section I and open new accounts; and

IX. Continue payments incidental to the membership or affiliation of the Principal in a religious institution, club, society, order, or other organization or to continue contributions to those organizations.

X. Authority with respect to personal and family maintenance is neither dependent upon, nor limited by, authority that an Agent may or may not have with respect to GIFTS.

**GIFTS** - The Principal authorizes the Agent to make gifts described as:

A gift "for the benefit of" a person includes a gift to a trust, an account under the Uniform Transfers to Minors Act, and a tuition savings account or prepaid tuition plan as defined under Internal Revenue Code Section 529, 26 U.S.C. Section 529, as amended.

Unless the power of attorney otherwise expressly provides, language in a power of attorney granting general authority with respect to gifts authorizes the Agent only to:

      i. Make outright to, or for the benefit of, a person including the Agent, a gift of any of the Principal's property, including by the exercise of a presently exercisable general power of appointment held by the Principal, in an amount per donee not to exceed the annual dollar limits of the federal gift tax exclusion under Internal Revenue Code Section 2503(b), 26 U.S.C. Section 2503(b), as amended, without regard to whether the federal gift tax exclusion applies to the gift, or if the Principal's spouse agrees to consent to a split gift pursuant to Internal Revenue Code Section 2513, 26 U.S.C. 2513, as amended, in an amount per donee not to exceed twice the annual federal gift tax exclusion limit; and
      ii. Consent, pursuant to Internal Revenue Code Section 2513, 26 U.S.C. Section 2513, as amended, to the splitting of a gift made by the Principal's spouse in an amount per donee not to exceed the aggregate annual gift tax exclusions for both spouses.

An Agent may make a gift of the Principal's property only as the Agent determines is consistent with the Principal's objectives if actually known by the Agent and, if unknown, as the Agent determines is consistent with the Principal's best interest based on all relevant factors, including:

i. The value and nature of the Principal's property;
ii. The Principal's foreseeable obligations and need for maintenance;
iii. Minimization of taxes, including income, estate, inheritance, generation skipping transfer, and gift taxes;
iv. Eligibility for a benefit, a program, or assistance under a statute or regulation; and
v. The Principal's personal history of making or joining in making gifts.

**SPECIAL INSTRUCTIONS** - The Principal SHALL NOT grant any additional powers or instructions to the Agent other than the powers listed under this power of attorney.

## EFFECTIVE DATE

This power of attorney shall begin:

**(Initial)**

- Immediately upon the execution of this document. These powers shall not be affected by any subsequent disability or incapacity the Principal may experience in the future.

## AUTHORITY OF AGENT

Any party dealing with the Agent hereunder may rely absolutely on the authority granted herein and need not look to the application of any proceeds nor the authority of the Agent as to any action taken hereunder. In this regard, no person who may in good faith act in reliance upon the representations of the Agent or the authority granted hereunder shall incur any liability to the Principal or their estate as a result of such act. The Principal hereby ratify and confirm whatever the Agent shall lawfully do under this instrument. The Agent is authorized as he or she deems necessary to bring an action in court so that this instrument shall be given the full power and effect that the Principal intends on by executing it.

## LIABILITY OF AGENT

The Agent shall not incur any liability to the Principal under this power except for a breach of fiduciary duty.

## REIMBURSEMENT AND COMPENSATION

The Agent is entitled to reimbursement for reasonable expenses incurred in exercising the powers hereunder. In addition, the Agent shall be entitled to reasonable compensation for their duties as Agent.

## AMENDMENT AND REVOCATION

The Principal can amend or revoke this power of attorney at any time, if the Principal is not incapacitated, by a document delivered to the Agent. Any amendment or revocation is ineffective as to a third party until such third party has notice of such revocation or amendment.

This power of attorney hereby revokes any and all financial powers of attorney the Principal may have executed in the past.

## STATE LAW

This power of attorney is governed by the laws of the State of Virginia. Unless the Principal specifically limits the period of time that this power of attorney will be in effect, the Agent may exercise the powers given to him or her after (s)he becomes incapacitated. A court, however, can take away the powers of the Agent if it finds that the Agent is not acting properly. The Principal may also revoke this power of attorney at their desire. This power of attorney does not authorize the Agent to appear in court for the Principal as an attorney-at-law or otherwise to engage in the practice of law unless he or she is a licensed attorney who is authorized to practice law in Virginia.

## PHOTOCOPIES

Photocopies of this document can be relied upon as though they were originals.

IN WITNESS WHEREOF, I executed this power of attorney on <u>August 8</u>, 20<u>23</u> in the presence of a notary public.

**Principal's Signature** <u>TYLER PARKER</u>
TYLER PARKER

☐

### AGENT'S CERTIFICATION AND ACCEPTANCE OF AUTHORITY

I, Tyler Parker, certify that the attached is a true copy of a power of attorney naming the undersigned as Agent for TYLER PARKER. I certify that to the best of my knowledge the Principal had the capacity to execute the power of attorney, is alive, and has not revoked the power of attorney; that my powers as Agent have not been altered or terminated; and that the power of attorney remains in full force and effect.

I accept appointment as Agent under this power of attorney.

This certification and acceptance is made under penalty of perjury.

**Agent's Signature** <u>Parker; Tyler-James/Agent</u>
Tyler Parker of 4418 Gannon Road, Portsmouth, Virginia, 23703.
☐

# NOTARY ACKNOWLEDGMENT

STATE OF <u>Virginia</u>

<u>Suffolk</u> County, ss.

On this **8th** day of <u>August</u>, 20___, before me appeared TYLER PARKER, as Principal of this power of attorney who proved to me through government issued photo identification to be the above-named person, in my presence executed this foregoing instrument and acknowledged that (s)he executed the same as his/her own free act and deed.

_____
Notary Public

SEAL

Nikita Cherelle Brown
Notary Public
Commonwealth of Virginia
Registration No. 8015856

My commission expires: **3-31-26**

Page

# Federal Reserve Act

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances purchased under the provisions of said section 14, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

[12 USC 412. As amended by the acts of Sept. 7, 1916 (39 Stat. 754); June 21, 1917 (40 Stat. 236); Feb. 27,

1932 (47 Stat. 57); Feb. 3, 1933 (47 Stat. 794); Jan. 30, 1934 (48 Stat. 338); March 6, 1934 (48 Stat. 991); June 30, 1941 (55 Stat. 395); May 25, 1943 (57 Stat. 85); June 12, 1945 (59 Stat. 237); June 19, 1968 (82 Stat. 189); Nov. 10, 1978 (92 Stat. 3672); March 31, 1980 (94 Stat. 140); Dec. 6, 1999 (113 Stat. 1638); and Oct. 28, 2003 (117 Stat. 1193).]

## 3. Distinctive letter on notes; destruction of unfit notes

Federal Reserve notes shall bear upon their faces a distinctive letter and serial number which shall be assigned by the Board of Governors of the Federal Reserve System to each Federal Reserve bank. Federal Reserve notes unfit for circulation shall be canceled, destroyed, and accounted for under procedures prescribed and at locations designated by the Secretary of the Treasury. Upon destruction of such notes, credit with respect thereto shall be apportioned among the twelve Federal Reserve banks as determined by the Board of Governors of the Federal Reserve System.

[12 USC 413. As amended by acts of June 21, 1917 (40 Stat. 236); Jan. 30, 1934 (48 Stat. 338); June 12, 1945 (59 Stat. 237); July 19, 1954 (68 Stat. 495); March 3, 1965 (79 Stat. 5); May 20, 1966 (80 Stat. 161); and March 18, 1968 (82 Stat. 50).]

## 4. Granting right to issue notes

The Board of Governors of the Federal Reserve System shall have the right, acting through the Federal Reserve agent, to grant in whole or in part, or to reject entirely the application of any Federal Reserve bank for Federal Reserve notes; but to the extent that such application may be granted the Board of Governors of the Federal Reserve System shall, through its local Federal Reserve agent, supply Federal Reserve notes to the banks so applying, and such bank shall be charged with the amount of the notes issued to it and shall pay such rate of interest as may be established by the Board of Governors of the Federal Reserve System on only that amount of such notes which equals the total amount of its outstanding Federal Reserve notes less the amount of gold certificates held by the Federal Reserve agent as collateral security. Federal Reserve notes issued to any such bank shall, upon delivery, together with such notes of such Federal Reserve bank as may be issued under section 18 of this Act upon security of United States 2 per centum Government bonds, become a first and paramount lien on all the assets of such bank.

[12 USC 414. As amended by acts of June 21, 1917 (40 Stat. 237); Jan. 30, 1934 (48 Stat. 338); June 12, 1945 (59 Stat. 237); and March 18, 1968 (82 Stat. 50).]

## 5. Deposit to reduce liability for outstanding notes

Any Federal Reserve bank may at any time reduce its liability for outstanding Federal Reserve notes by depositing with the Federal Reserve agent its Federal Reserve notes, gold certificates, Special Drawing Right certificates, or lawful money of the United States. Federal Reserve notes so deposited shall not be reissued, except upon compliance with the conditions of an original issue. The liability of a Federal Reserve bank with respect to its outstanding Federal Reserve notes shall be reduced by any amount paid by such bank to the Secretary of the Treasury under section 4 of the Old Series Currency Adjustment

Act.

[12 USC 415. As reenacted by act of June 21, 1917 (40 Stat. 237); and as amended by acts of Jan. 30, 1934 (48 Stat. 339); June 30, 1961 (75 Stat. 147); March 18, 1968 (82 Stat. 50); and June 19, 1968 (82 Stat. 189). The act of June 30, 1961, is the Old Series Currency Adjustment Act.]

## 6. Substitution of collateral; retirement of Federal Reserve notes

Any Federal reserve bank may at its discretion withdraw collateral deposited with the local Federal reserve agent for the protection of its Federal reserve notes issued to it and shall at the same time substitute therefor other collateral of equal amount with the approval of the Federal reserve agent under regulations to be prescribed by the Board of Governors of the Federal Reserve System. Any Federal reserve bank may retire any of its Federal reserve notes by depositing them with the Federal reserve agent or with the Treasurer of the United States, and such Federal reserve bank shall thereupon be entitled to receive back the collateral deposited with the Federal reserve agent for the security of such notes. Any Federal Reserve bank shall further be entitled to receive back the collateral deposited with the Federal Reserve agent for the security of any notes with respect to which such bank has made payment to the Secretary of the Treasury under section 4 of the Old Series Currency Adjustment Act. Federal reserve notes so deposited shall not be reissued except upon compliance with the conditions of an original issue.

[12 USC 416. As amended by acts of June 21, 1917 (40 Stat. 237); June 30, 1961 (75 Stat. 147); and March 18, 1968 (82 Stat. 50). The act of June 30, 1961 is the Old Series Currency Adjustment Act.]

## 7. Custody of reserve notes, gold certificates, and lawful money

All Federal Reserve notes and all gold certificates, Special Drawing Right certificates, and lawful money issued to or deposited with any Federal Reserve agent under the provisions of the Federal Reserve Act shall hereafter be held for such agent, under such rules and regulations as the Board of Governors of the Federal Reserve System may prescribe, in the joint custody of himself and the Federal Reserve bank to which he is accredited. Such agent and such Federal Reserve bank shall be jointly liable for the safekeeping of such Federal Reserve notes, gold certificates, Special Drawing Right certificates, and lawful money. Nothing herein contained, however, shall be construed to prohibit a Federal Reserve agent from depositing gold certificates and Special Drawing Right certificates with the Board of Governors of the Federal Reserve System, to be held by such Board subject to his order, or with the Treasurer of the United States for the purposes authorized by law.

[12 USC 417. As added by act of June 21, 1917 (40 Stat. 238); and amended by acts of Jan. 30, 1934 (48 Stat. 339) and June 19, 1968 (82 Stat. 189).]

## 8. Engraving of plates; denominations and form of notes

In order to furnish suitable notes for circulation as Federal reserve notes, the Secretary of the Treasury shall cause plates and dies to be engraved in the best manner to guard

against counterfeits and fraudulent alterations, and shall have printed therefrom and numbered such quantities of such notes of the denominations of $1, $2, $5, $10, $20, $50, $100, $500, $1,000 $5,000, $10,000 as may be required to supply the Federal reserve banks. Such notes shall be in form and tenor as directed by the Secretary of the Treasury under the provisions of this Act and shall bear the distinctive numbers of the several Federal reserve banks through which they are issued.

[12 USC 418. As amended by acts of Sept. 26, 1918 (40 Stat. 970); June 4, 1963 (77 Stat. 54); and Sept. 23, 1994 (108 Stat. 2293).]

## 9. Custody of unissued notes

When such notes have been prepared, the notes shall be delivered to the Board of Governors of the Federal Reserve System subject to the order of the Secretary of the Treasury for the delivery of such notes in accordance with this Act.

[12 USC 419. As amended by acts of May 29, 1920 (41 Stat. 654) and Sept. 23, 1994 (108 Stat. 2293).]

## 10. Custody of plates and dies; expenses of issue and retirement of notes

The plates and dies to be procured by the Secretary of the Treasury for the printing of such circulating notes shall remain under his control and direction, and the expenses necessarily incurred in executing the laws relating to the procuring of such notes, and all other expenses incidental to their issue and retirement, shall be paid by the Federal reserve banks, and the Board of Governors of the Federal Reserve System shall include in its estimate of expenses levied against the Federal reserve banks a sufficient amount to cover the expenses herein provided for.

[12 USC 420. Part of original Federal Reserve Act; not amended.]

## 11. Examinations of plates, dies, etc.

The Secretary of the Treasury may examine the plates, dies, bed pieces, and other material used in the printing of Federal Reserve notes and issue regulations relating to such examinations.

[12 USC 421. As amended by act of Sept. 23, 1994 (108 Stat. 2293).]

## 12. Appropriation for engraving, etc.

Any appropriation heretofore made out of the general funds of the Treasury for engraving plates and dies, the purchase of distinctive paper, or to cover any other expense in connection with the printing of national-bank notes or notes provided for by the Act of May thirtieth, nineteen hundred and eight, and any distinctive paper that may be on hand at the time of the passage of this Act may be used in the discretion of the Secretary for the purposes of this Act, and should the appropriations heretofore made be insufficient to meet the requirements of this Act in addition to circulating notes provided for by existing law, the Secretary is hereby authorized to use so much of any funds in the Treasury not

otherwise appropriated for the purpose of furnishing the notes aforesaid: *Provided, however,* That nothing in this section contained shall be construed as exempting national banks or Federal reserve banks from their liability to reimburse the United States for any expenses incurred in printing and issuing circulating notes.

[Omitted from U.S. Code. Part of original Federal Reserve Act. This paragraph was in effect amended by subsection (a) of section 1 of the Permanent Appropriation Repeal Act of 1934, approved June 26, 1934 (48 Stat. 1224; 31 USC, 725), which provides: "That effective July 1, 1935, such portions of any acts as provide permanent or continuing appropriations from the general fund of the Treasury to be disbursed under the appropriation accounts appearing on the books of the Government, and listed in subsection (b) of this section, are hereby repealed, and any unobligated balances under such accounts as of June 30, 1935, shall be covered into the surplus fund of the Treasury." Among the appropriation accounts listed in subsection (b) is that for the preparation and issue of Federal Reserve notes.]

## 13. Checks and drafts to be received on deposit at par

Every Federal reserve bank shall receive on deposit at par from depository institutions or from Federal reserve banks checks and other items, including negotiable orders of withdrawal and share drafts and drafts drawn upon any of its depositors, and when remitted by a Federal reserve bank, checks and other items, including negotiable orders of withdrawal and share drafts and drafts drawn by any depositor in any other Federal reserve bank or depository institution upon funds to the credit of said depositor in said reserve bank or depository institution. Nothing herein contained shall be construed as prohibiting a depository institution from charging its actual expense incurred in collecting and remitting funds, or for exchange sold to its patrons. The Board of Governors of the Federal Reserve System shall, by rule, fix the charges to be collected by the depository institutions from its patrons whose checks and other items, including negotiable orders of withdrawal and share drafts are cleared through the Federal reserve bank and the charge which may be imposed for the service of clearing or collection rendered by the Federal reserve bank.

[12 USC 360. As amended by act of March 31, 1980 (94 Stat. 140).]

## 14. Transfer of funds among Federal Reserve banks

The Board of Governors of the Federal Reserve System shall make and promulgate from time to time regulations governing the transfer of funds and charges therefor among Federal reserve banks and their branches, and may at its discretion exercise the functions of a clearing house for such Federal reserve banks, or may designate a Federal reserve bank to exercise such functions, and may also require each such bank to exercise the functions of a clearing house for depository institutions.

[12 USC 248-1. As amended by acts of Aug. 23, 1935 (49 Stat. 704) and March 31, 1980 (94 Stat. 140). Reclassified (previously 12 USC 248(o).]

## 15. Settlement fund

The Secretary of the Treasury is hereby authorized and directed to receive deposits of

gold or of gold certificates or of Special Drawing Right certificates with the Treasurer or any Assistant Treasurer of the United States when tendered by any Federal Reserve bank or Federal Reserve agent for credit to its or his account with the Board of Governors of the Federal Reserve System. The Secretary shall prescribe by regulation the form of receipt to be issued by the Treasurer or Assistant Treasurer to the Federal Reserve bank or Federal Reserve agent making the deposit, and a duplicate of such receipt shall be delivered to the Board of Governors of the Federal Reserve System by the Treasurer at Washington upon proper advices from any Assistant Treasurer that such deposit has been made. Deposits so made shall be held subject to the orders of the Board of Governors of the Federal Reserve System and deposits of gold or gold certificates shall be payable in gold certificates, and deposits of Special Drawing Right certificates shall be payable in Special Drawing Right certificates, on the order of the Board of Governors of the Federal Reserve System to any Federal Reserve bank or Federal Reserve agent at the Treasury or at the subtreasury of the United States nearest the place of business of such Federal Reserve bank or such Federal Reserve agent. The order used by the Board of Governors of the Federal Reserve System in making such payments shall be signed by the chairman or vice chairman, or such other officers or members as the Board may by regulation prescribe. The form of such order shall be approved by the Secretary of the Treasury.

[12 USC 467. As added by act of June 21, 1917 (40 Stat. 238); and amended by acts of Jan. 30, 1934 (48 Stat. 339) and June 19, 1968 (82 Stat. 189). Prior to enactment of the Banking Act of 1935, approved Aug. 23, 1935, the chairman and vice chairman of the Board of Governors of the Federal Reserve System were known as the governor and vice governor of the Federal Reserve Board, respectively. See note to section 1.]

## 16. Expenses

The expenses necessarily incurred in carrying out these provisions, including the cost of the certificates or receipts issued for deposits received, and all expenses incident to the handling of such deposits shall be paid by the Board of Governors of the Federal Reserve System and included in its assessments against the several Federal reserve banks.

[12 USC 467. As added by act of June 21, 1917 (40 Stat. 238).]

## 17. Preservation of provisions of Act of March 14, 1900

Nothing in this section shall be construed as amending section six of the Act of March fourteenth, nineteen hundred, as amended by the Acts of March fourth, nineteen hundred and seven, March second, nineteen hundred and eleven, and June twelfth, nineteen hundred and sixteen, nor shall the provisions of this section be construed to apply to the deposits made or to the receipts or certificates issued under those Acts.

[12 USC 467. As added by act of June 21, 1917 (40 Stat. 239).]

Last Update: March 13, 2017

```
Bank:     ABNB                           Relational Search Report                    Run Date:  08-07-2023
Report:   RELS                                                                       Post Date: 08-07-2023
                                                                                     Page:      1 of 1

TYLER J. PARKER
4418 GANNON RD.
PORTSMOUTH  VA  23703

                                                                    Deposit Total Owner Balance:        -279.07

                                         Deposits

          Account                Auth    Current    Collected   Available   Int       Maturity         Acct
          Number   Description   Trans   Balance    Balance     Balance     Rate      Date     Status  Role

*         4200256629  Savings - TYLER J. P  Yes   -279.07    -279.07     -3,113.62  0.00000                CO    TAX

                                                                    Loan Total Owner Balance:        22,155.62

                                   Loans / Safe Deposit Box

          Account                Auth    Current    Available  Payment Amount  Amount To   Int Rate   Mat Date   AcctRole
          Number   Description   Trans   Balance    Credit  Tot Amt Billed  Pay Current  Pct Sold   Due Date   Status

*         4200256637  Indirect Used Vehicl  Yes   22,155.62   0.00       485.15    3,409.65   4.99000             TAX
                                                              3,985.75              0.00000  02-28-2023  NPFM
```



**UNITED STATES POSTAL SERVICE.**

CHURCHLAND
3590 TOWNE POINT RD
PORTSMOUTH, VA 23703-9993
(800)275-8777

07/27/2023                          11:44 AM
--------------------------------------------
Product              Qty    Unit      Price
                            Price
--------------------------------------------
Priority Mail®         1              $9.65
Flat Rate Env
    Alexandria, VA 22314
    Flat Rate
    Expected Delivery Date
       Sat 07/29/2023
    Tracking #:
       9505 5161 4722 3208 0963 57
    Insurance                         $0.00
       Up to $100.00 included
Total                                 $9.65
--------------------------------------------

Grand Total:                          $9.65
--------------------------------------------
Debit Card Remit                      $9.65
    Card Name: VISA
    Account #: XXXXXXXXXXXX7555
    Approval #: 690692
    Transaction #: 859
    Receipt #: 052827
    Debit Card Purchase: $9.65
    AID: A0000000980840       Chip
    AL: US DEBIT
    PIN: Verified

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
             1-800-222-1811.

    Save this receipt as evidence of
insurance. For information on filing an
       insurance claim go to
   https://www.usps.com/help/claims.htm
        or call 1-800-222-1811

         Preview your Mail
         Track your Packages
         Sign up for FREE @
   https://informeddelivery.usps.com

   All sales final on stamps and postage.
   Refunds for guaranteed services only.
        Thank you for your business.

      Tell us about your experience.
   Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



July 26, 2023

National Credit Union Administration
RE: Case Number 00214477
"No person shall be deprived of life, liberty, or property, without
due process of law, nor shall private property be taken for public
use, without just compensation" In God We Trust
To whom it may concern:

This letter is to notify National Credit Union
Administration the claim for Principal TYLER PARKER
Interest in Equity for account ending in #6637 at ABNB Federal
Credit Union has not been resolved in good faith. Mr. Duncan
ABNB FCU fiscal officer failing to accredit the consumer credit
transaction.

Accompanied with this notice are documentations
evidencing William Bane VP of Internal Audit extorting
misleading the entitlement holder of the account intentionally
damaging Principal TYLER PARKER Titles, Rights, Interest
and Equity owed to Principal TYLER PARKER. Mr. Bane states
'The Credit Union will not pay you for the balance of your loan"
and refers TYLER PARKER to "repay the vehicle loan". Mr.
Bane is coercing Principal TYLER PARKER to repay when
repaying is to pay again. Mr. Bane is directly acknowledging
Principal TYLER PARKER prepaid the loan and is to receive all
titles rights Interest and Equity owed to Principal TYLER
PARKER.
This particular account Principal TYLER PARKER shares with
ABNB Federal Credit Union ending in #6637 accrues Interest
Equity owed to Principal TYLER PARKER.

1) Anthony Duncan CFO of ABNB Federal Credit Union
received an application from Principal TYLER PARKER
registering the entitled party on record for assigning estate
to Anthony Duncan CFO of ABNB Federal Credit Union
for account ending in #6637

2) Anthony Duncan CFO of ABNB Federal Credit Union
received negotiable instruments to accredit account ending
in #6637 accompanied with a tender to administrate
Principal TYLER PARKER account in a process
Parker;Tyler-James/executor on behalf of Principal TYLER

3) The document to back all titles rights Interest and Equity owed to Principal TYLER PARKER is a receipt of an application promissory note titled retail installment sale contract that ABNB Federal Credit Union did not give value to the note but was only assigned after Principal TYLER PARKER authorized ABNB Federal Credit Union CFO to hold estate and issue Interest in Equity periodically as promissory note evident installed payments payable to Principal TYLER PARKER.

4) Parker;Tyler-James/executor on behalf of Principal TYLER PARKER is referencing the Federal Reserve Act Section 16. In Federal Reserve Act Section 16-part 2 Application for notes states "The collateral security (The Application) offered shall be notes, drafts, bill of exchange endorsed by a member bank of any Federal Reserve district and purchased under any obligation which are direct obligations of, or are fully guaranteed as to Principal and Interest by the United States or any agency thereof" Please resolve this claim to apply Principal TYLER PARKER balance to Principal TYLER PARKER account ending in #6637. **After receiving this notice respond back within 5 business days notifying Principal TYLER PARKER has been accredited or explaining reasons Principal TYLER PARKER is to not receive all titles right Interest and Equity owed Principal TYLER PARKER.**

By: Parker; Tyler-James/Agent

4: TYLER PARKER



July 17, 2023

**VIA UPS and CERTIFIED MAIL**

Tyler James Parker
4418 Gannon Road
Portsmouth, VA 23703

Re: Your Letters Delivered on July 12, 2023, and July 14, 2023

Dear Mr. Parker,

ABNB Federal Credit Union (the "Credit Union") is in receipt of two letters personally delivered to the Credit Union on July 12, 2023, and July 14, 2023, concerning your instructions to transfer the principal balance of your vehicle loan to your account.

As was stated in the letter dated June 20, 2023, that I previously sent to you, on June 17, 2020, the Credit Union granted you a loan to purchase a 2016 Mercedes Benz C300 automobile from Checkered Flag Jaguar Land Rover. According to the terms of the Retail Installment Sales Contract you signed on June 17, 2020 (the "Contract"), you agreed to be obligated to pay $408.48 in 75 installment payments that commenced on July 31, 2020. You enclosed a copy of the Contract with the documentation you provided to the National Credit Union Administration as proof of your agreement to such payments. Your signature on the Contract indicates your agreement to pay this obligation.

We remind you once again that your signature clearly signifies that the Credit Union is under no obligation to make these payments for you and the Credit Union will not make these payments for you.

You have asked for an explanation of why you will not receive payments from the Credit Union. The Credit Union will not pay you for the balance of your loan because your interpretation is incorrect that the balance of your loan is an obligation of the United States government. Therefore, you remain obligated to repay the vehicle loan in accordance with the Contract you signed, not the United States government.

I trust that this letter adequately addresses your concerns; the Credit Union expects receipt of prompt payments from you as required by the Contract.

Sincerely,

William E. Bane
Vice President of Internal Audit

cc: Anthony Duncan

I Parker;Tyler-James/ agent on behalf of TYLER PARKER/Principal hereby accept all titles rights interest and Equity owed to Principal TYLER PARKER. I hereby Instruct Anthony Duncan to Apply Principal balance To Principal account #4200256637 Each and every billing cycle for set-Off

I hereby Instruct Anthony Duncan to Respond in writing within 5 business days to 4418 Gannon Road Portsmouth VA, 23703
                        Giving notice
                                        That instructions have been
received and applied


If instructions are not applied, please explain in details why Principal TYLER PARKER note is not for deposit and what happened to the security collateral that secured all future payments.


If you have any issues with these instructions, please seek legal advice

For: TYLER PARKER

By: Parker; Tyler-James/ Agent

4 Deposit

For: TYLER PARKER

By: Parker, Tyler - James/Beneficiary

DBGPSP1 23T703

OUR RECORDS INDICATE THAT YOUR LOAN IS PAST DUE. PLEASE SEND YOUR PAYMENT PROMPTLY, OR CALL IF YOU FEEL THIS NOTICE IS IN ERROR (757) 523-5370. WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT. THANK YOU FOR YOUR COOPERATION, CREDIT DEPARTMENT.

Accepted   Pay to the Bearer   Pay on Demand

4 deposit   Four Hundred Twenty-Eight and 90/100 dollars

## REMITTANCE INSTRUCTIONS

- Write your account number on the face of your check.
- Insert your check with this document into a return envelope.
- Address the envelope to 830 Greenbrier CIR - Chesapeake VA 23320-2624
- Write your name and address in the upper left corner of the envelope.
- Seal the envelope, apply a postage stamp, and mail.
- Please make any address changes below.

TYLER J PARKER
4418 GANNON RD
PORTSMOUTH, VA 23703-4831

| Days Delinquent | Date of Notice |
|---|---|
|  |  |

## PAST DUE NOTICE

| Account Number | Total Amt Due |
|---|---|
| ******6637 | $428.90 |

Amount Enclosed $ _____



ABNB Federal Credit Union
830 Greenbrier Circle
Chesapeake VA 23320

Federal Credit Union

00000531-S—B—D 000053
TYLER J PARKER
4418 GANNON RD
PORTSMOUTH, VA 23703-4831

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
BMS



ABNB Federal Credit Union
830 Greenbrier Circle
Chesapeake VA 23320

Federal Credit Union

TYLER J PARKER
4418 GANNON RD
PORTSMOUTH, VA 23703-4831

## PAST DUE NOTICE

| Current Amt Due | Past Due Amt | Late Charge | Total Amt Due | Due Date |
|---|---|---|---|---|
| $0.00 | $428.90 | $20.42 | $428.90 | |

**By endorsement**

**(3)** A bill payable to order is negotiated by the endorsement of the holder.

R.S., c. B-5, s. 60.

**Without endorsement**

**60 (1)** Where the holder of a bill payable to his order transfers it for value without endorsing it, the transfer gives the transferee such title as the transferor had in the bill, and the transferee in addition acquires the right to have the endorsement of the transferor.

**Representative capacity**

**(2)** Where any person is under obligation to endorse a bill in a representative capacity, he may endorse the bill in such terms as to negative personal liability.

R.S., c. B-5, s. 61.

**Endorsing**

**61 (1)** An endorsement in order to operate as a negotiation must be

    **(a)** written on the bill itself and be signed by the endorser; and

    **(b)** an endorsement of the entire bill.

**Allonge**

**(2)** An endorsement written on an allonge, or on a copy of a bill issued or negotiated in a country where copies are recognized, is deemed to be written on the bill itself.

**Partial endorsement**

**(3)** A partial endorsement, that is to say, an endorsement that purports to transfer to the endorsee a part only of the amount payable, or that purports to transfer the bill to two or more endorsees severally, does not operate as a negotiation of the bill.

R.S., c. B-5, s. 62.

**Signature sufficient**

**62 (1)** The simple signature of the endorser on a bill, without additional words, is a sufficient endorsement.

**Two or more payees**

**When demand bill overdue**

(2) A bill payable on demand is deemed to be overdue, within the meaning and for the purposes of this section, when it appears on the face of it to have been in circulation for an unreasonable length of time.

**Time**

(3) What is an unreasonable length of time for the purpose of subsection (2) is a question of fact.

R.S., c. B-5, s. 70.

**Presumption**

**70** Except where an endorsement bears date after the maturity of the bill, every negotiation is, in the absence of evidence to the contrary, deemed to have been effected before the bill was overdue.

R.S., c. B-5, s. 71.

**Taking bill with notice of dishonour**

**71** Where a bill that is not overdue has been dishonoured, any person who takes it with notice of the dishonour takes it subject to any defect of title attaching thereto at the time of dishonour, but nothing in this section affects the rights of a holder in due course.

R.S., c. B-5, s. 72.

**Reissue of bill**

**72** Where a bill is negotiated back to the drawer, to a prior endorser or to the acceptor, that party may, subject to this Act, reissue and further negotiate the bill, but he is not entitled to enforce the payment of the bill against any intervening party to whom he was previously liable.

R.S., c. B-5, s. 73.

# Rights and Powers of Holder

### Rights and powers of holder

**73** The rights and powers of the holder of a bill are as follows:

    (a) he may sue on the bill in his own name;

    (b) where he is a holder in due course, he holds the bill free from any defect of title of prior parties, as well as from mere personal defences available to prior parties

4 Deposit

FOR: TYLER PARKER

By: Parker; Tyler-James/Beneficiary

CBGPSP1 23703

OUR RECORDS INDICATE THAT YOUR LOAN IS PAST DUE. PLEASE SEND YOUR PAYMENT PROMPTLY, OR CALL IF YOU FEEL THIS NOTICE IS IN ERROR (757) 523-5370. WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT. THANK YOU FOR YOUR COOPERATION, CREDIT DEPARTMENT.

Accepted   Pay to the Bearer   Pay on Demand

4 Deposit   Five Hundred nine and 41/100 dollars

| Days Delinquent | Date of Notice |
|---|---|
| ● | ● |

## PAST DUE NOTICE

| Account Number | Total Amt Due |
|---|---|
| ******6637 | $509.41 |

Amount Enclosed $ _____

### REMITTANCE INSTRUCTIONS

- Write your account number on the face of your check.
- Insert your check with this document into a return envelope.
- Address the envelope to 830 Greenbrier CIR - Chesapeake VA 23320-2624
- Write your name and address in the upper left corner of the envelope.
- Seal the envelope, apply a postage stamp, and mail.
- Please make any address changes below.

TYLER J PARKER
4418 GANNON RD
Portsmouth VA 23703-4731



**ABNB** Federal Credit Union

ABNB Federal Credit Union
830 Greenbrier Circle
Chesapeake VA 23320

*000100/1 PRSRT D-000100

TYLER J PARKER
4418 GANNON RD
PORTSMOUTH VA 23703-4831

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
BMS

ABNB Federal Credit Union
830 Greenbrier Circle
Chesapeake VA 23320

Federal Credit Union

# PAST DUE NOTICE

| Current Amt Due | Past Due Amt | Late Charge | Total Amt Due | Due Date |
|---|---|---|---|---|
| $0.00 | $509.41 | $24.26 | $509.41 | |

**(c)** where his title is defective, if he negotiates the bill to a holder in due course, that holder obtains a good and complete title to the bill; and

**(d)** where his title is defective, if he obtains payment of the bill, the person who pays him in due course gets a valid discharge for the bill.

R.S., c. B-5, s. 74.

# Presentment for Acceptance

**When presentment for acceptance necessary**

**74 (1)** Where a bill is payable at sight or after sight, presentment for acceptance is necessary in order to fix the maturity of the instrument.

**Express stipulation**

**(2)** Where a bill expressly stipulates that it shall be presented for acceptance, or where a bill is drawn payable elsewhere than at the residence or place of business of the drawee, it must be presented for acceptance before it can be presented for payment.

**Other cases**

**(3)** In no other case is presentment for acceptance necessary in order to render liable any party to the bill.

R.S., c. B-5, s. 75.

**Presentment excused**

**75** Where the holder of a bill, drawn payable elsewhere than at the place of business or residence of the drawee, has not time, with the exercise of reasonable diligence, to present the bill for acceptance before presenting it for payment on the day that it falls due, the delay caused by presenting the bill for acceptance before presenting it for payment is excused and does not discharge the drawer and endorsers.

R.S., c. B-5, s. 76.

**Sight bill**

**76 (1)** Subject to this Act, when a bill payable at sight or after sight is negotiated, the holder must either present it for acceptance or negotiate it within a reasonable time.

**If not presented**

**(2)** If the holder does not comply with the requirement of subsection (1), the drawer and all endorsers prior to that holder are discharged.

**Payment in due course**

**(2)** Payment in due course means payment made at or after the maturity of the bill to the holder thereof in good faith and without notice that his title to the bill is defective.

**Accommodation bill**

**(3)** Where an accommodation bill is paid in due course by the party accommodated, the bill is discharged.

R.S., c. B-5, s. 139.

**Payment by drawer or endorser**

**139** Subject to the provisions of section 138 with respect to an accommodation bill, when a bill is paid by the drawer or endorser, it is not discharged, but,

    **(a)** where a bill payable to, or to the order of, a third party is paid by the drawer, the drawer may enforce payment thereof against the acceptor, but may not reissue the bill; and

    **(b)** where a bill is paid by an endorser, or where a bill payable to drawer's order is paid by the drawer, the party paying it is remitted to his former rights as regards the acceptor or antecedent parties, and he may, if he thinks fit, strike out his own and subsequent endorsements and again negotiate the bill.

R.S., c. B-5, s. 140.

**Acceptor holding at maturity**

**140** When the acceptor of a bill is or becomes the holder of it, at or after its maturity, in his own right, the bill is discharged.

R.S., c. B-5, s. 141.

**Renouncing rights**

**141 (1)** When the holder of a bill, at or after its maturity, absolutely and unconditionally renounces his rights against the acceptor, the bill is discharged.

**Against one party**

**(2)** The liabilities of any party to a bill may in like manner be renounced by the holder before, at or after its maturity.

**In writing**

**(3)** A renunciation must be in writing, unless the bill is delivered to the acceptor.



ABNB Federal Credit Union
830 Greenbrier Circle
Chesapeake VA 23320

Federal Credit Union

TYLER J PARKER
4418 GANNON RD
PORTSMOUTH VA 23703-4831

## PAST DUE NOTICE

| Current Amt Due | Past Due Amt | Late Charge | Total Amt Due | Due Date |
|---|---|---|---|---|
| $0.00 | $428.90 | $20.42 | $428.90 | |

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
BMS

ABNB Federal Credit Union
830 Greenbrier Circle
Chesapeake VA 23320

Federal Credit Union

*000076/1 PRSRT D-000076

TYLER J PARKER
4418 GANNON RD
PORTSMOUTH VA 23703-4831

EBCPSP1 23703

OUR RECORDS INDICATE THAT YOUR LOAN IS PAST DUE. PLEASE SEND YOUR
PAYMENT PROMPTLY, OR CALL IF YOU FEEL THIS NOTICE IS IN ERROR (757)
523-5370. WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT
BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON
YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT. THANK YOU
FOR YOUR COOPERATION, CREDIT DEPARTMENT.

Accepted Pay to the Bearer   Pay on Demand
4 Deposit Four Hundred Twenty-Eight and 90/100 dollars

## REMITTANCE INSTRUCTIONS

▪ Write your account number on the face of your check.

▪ Insert your check with this document into a return envelope.

▪ Address the envelope to 830 Greenbrier CIR - Chesapeake VA 23320-2624

▪ Write your name and address in the upper left corner of the envelope.

▪ Seal the envelope, apply a postage stamp, and mail.

▪ Please make any address changes below.

TYLER J PARKER
4418 GANNON RD
PORTSMOUTH VA 23703-4831

| Days Delinquent | Date of Notice |
|---|---|
| ▓ | ▓ |

## PAST DUE NOTICE

| Account Number | Total Amt Due |
|---|---|
| *******6637 | $428.90 |

| Amount Enclosed $ |
|---|

4 Deposit

For: TYLER PARKER.

By: Parker, Tyler-James/Beneficiary

# Federal Reserve Act

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances purchased under the provisions of said section 14, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

July 12, 2023
ABNB Federal Credit Union
ABNB Federal Credit Union Supervisory Committee
VP of Internal Audit - William Bane
NCUA Consumer Assistance Case: 00214477
Ref #9505516147243095047157
830 Greenbrier Circle, Chesapeake, VA 23320


Dear Mr. Bane


This response to William Bane Vice President of Internal Audit
at ABNB Federal Credit Union is regarding the misjudgment on
TYLER PARKER/Principal also known as payee of record for
account #4200256637. Instructions was to transfer the principal
balance to the principal account each and every billing cycle for
set-Off. I Parker;Tyler-James/agent on behalf of TYLER
PARKER/Principal Accepted all titles rights interest and equity
owed to Principal TYLER PARKER.


I Parker;Tyler-James/agent on behalf of TYLER
PARKER/Principal notified NCUA that TYLER PARKER is in
a security installment agreement with a Credit Union that is in
compliance with the NCUA accepting TYLER PARKER
securities but not putting the notes in Security. ABNB Federal
Credit Union received a registered bond also known as an
application or blank check accepting responsibilities and
obligations as fiduciary duty to grant TYLER
PARKER/Principal when instructed while securities are placed
in trust.


I Parker;Tyler-James/agent on behalf of TYLER
PARKER/Principal received receipt documents when
application for installment contract was transferred to ABNB
Federal Credit Union. Showing proof TYLER
PARKER/Principal has a valid contract with ABNB Federal

Credit Union. All Interest installment payments in the receipt documents held by and owed to TYLER PARKER/Principal are created from the original bond accredited. Which would be the application that was deposited for notes at the Federal Reserve bank according to Federal Reserve section 16.

Once again I Parker;Tyler-James/agent on behalf of TYLER PARKER/Principal Instructed Anthony Duncan CFO of ABNB Federal Credit Union to apply Principal balance To Principal account each and every billing cycle for set-Off. The Principal balance shall be obligations of the United States and shall be receivable by all national, member banks and federal reserve banks. To be redeemed in lawful money on demand at the Treasury Department of the United States, or at any Federal Reserve bank.

**I hereby Instruct William Bane to Respond in writing within 5 business days to 4418 Gannon Road Portsmouth VA, 23703. Giving notice that instructions have been received and applied. If instructions are not granted, please explain in details why Principal will not receive what is rightfully owed to TYLER PARKER/Principal.**

By: Parker; Tyler-James/ Agent

4: TYLER PARKER



**Federal Credit Union**

June 20, 2023

Tyler James Parker
4418 Gannon Rd.
Portsmouth, VA 23703

**VIA Certified Mail**

RE: **NCUA Consumer Assistance Case: 00214477**

Dear Mr. Parker,

ABNB Federal Credit Union (Credit Union) is in receipt of the complaint you filed with the National Credit Union Administration (NCUA), Consumer Assistance Center. The Credit Union's Internal Audit Department conducted a thorough investigation into this matter.

According to your case, you stated that you are seeking "to recover damages for civil money penalty breach of fiduciary duty" stating that the Credit Union "is obligated to operate in good faith to fulfill the dwelling account" and that the Credit Union CFO "has not upheld his obligated duties causing Parker; Tyler-James/agent unable to fulfill his duties due to TYLER PARKER/Principal." Further, you believe the Credit Union is obligated to pay your monthly automobile loan payments.

On June 17, 2020, the Credit Union granted you a loan to purchase a 2016 Mercedes Benz C300 automobile from Checkered Flag Jaguar Land Rover. According to the terms of the "Retail Installment Sales Contract" you signed on June 17, 2020, you agreed to be obligated to pay $408.48 in 75 installment payments that commenced on July 31, 2020. You enclosed a copy with the documentation you provided to the NCUA as proof of your agreement to such payments. Your signature on the "Retail Installment Sales Contract" indicates your agreement to pay this obligation and clearly signifies that the Credit Union is under no obligation to make these payments for you.

I trust our investigation and response resolves this matter for you. We appreciate and value your membership at the Credit Union. If you have any questions, please call me at (757) 523-5300, extension 3317 Monday through Friday 9 am – 5 pm ET.

Sincerely,

*William E. Bane*
William E. Bane
Vice President of Internal Audit

cc:   ABNB Federal Credit Union Supervisory Committee
      NCUA Consumer Assistance Center



May 4, 2023

Mr. Tyler Parker
4418 Gunnon Road
Portsmouth, VA 23703

**RE: Case Number 00214477**

Dear Mr. Tyler Parker:

This letter acknowledges receipt of your correspondence concerning ABNB Federal Credit Union. The NCUA is the independent federal agency that regulates, charters and supervises federal credit unions. The NCUA operates the National Credit Union Share Insurance Fund insuring the deposits of account holders in all federal credit unions and the overwhelming majority of state-chartered credit unions. Based upon your correspondence we have opened a case in the NCUA Consumer Assistance Center. **Please make note of the case number listed above and provide the case number on any future correspondence or contact with our office.**

The NCUA Consumer Assistance Center assists consumers in resolving disputes with credit unions and providing information about federal consumer financial protection and share insurance matters. We have found that complaints can normally be resolved if the complainant works with the credit union directly. As member-owned financial cooperatives, credit unions have a strong interest in resolving disputes with consumers in an appropriate and timely manner. Although you may have already communicated directly with the credit union about this matter, providing the credit union with written information about your concerns and your desired outcome is an important step in resolving this matter. Therefore, the following steps described below are involved in processing your case.

Attempted Resolution

At this stage we have forwarded your complaint and any documents you provided in support of the complaint to the credit union and requested that it work with you to resolve this matter in an appropriate and timely manner. Specifically, within 60 calendar days of receiving your complaint from the NCUA, we request the credit union:

- Review your complaint;
- Communicate directly with you as needed and appropriate; and
- Report back in writing to you and the NCUA Consumer Assistance Center about whether it has been able to resolve this matter.

If you receive a letter from the credit union about the attempted resolution of this matter and:

- You agree that the matter has been resolved, the NCUA Consumer Assistance Center will close its case in this matter.
- You do not agree that the matter has been resolved, please contact us within 30 calendar days of the date of the credit union's letter to you.

If you do not receive a letter from the credit union about the attempted resolution of this matter within 60 calendar days of the date of this letter, please contact us. The NCUA Consumer Assistance Center will then determine the next course of action, which could include its investigation of this matter.

The NCUA's Authority

Please note, the NCUA does not have the authority to resolve every type of problem that may arise with a credit union. We are unable to resolve contract disputes or undocumented factual disputes between a consumer and a credit union. In these cases, we suggest that you contact an attorney. We cannot investigate a matter that either has been addressed or is pending a decision by a court of law. The NCUA cannot offer legal assistance. The NCUA cannot represent consumers in settling claims or recovering damages. The NCUA does not own, operate, or control credit unions, nor do we establish their operating policies and procedures. We cannot dictate the range of services they offer and are unable to resolve complaints about customer service or disagreements over specific credit union policies and procedures not addressed by federal law or regulation.

Communication with the NCUA Consumer Assistance Center

The NCUA Consumer Assistance Center offers three methods of communication regarding your complaint:

- You may securely communicate with the NCUA Consumer Assistance Center through the NCUA Consumer Assistance Center portal, either as a guest or a registered user. Portal access can be found here, or by visiting the online NCUA Consumer Assistance Center on www.mycreditunion.gov.

- If you choose not to communicate via the NCUA Consumer Assistance Center portal you may reply to this secure email. **When responding to this email do not change the subject line, including the reference number.** If your communication contains sensitive information, you

should take appropriate precautions to send information in a secured format.

- You may also contact us via phone with any questions at 800-755-1030, between 8am-5pm EST. Please have the relevant NCUA consumer complaint case number readily available.

For additional information on the NCUA and the NCUA Consumer Assistance Center, please visit www.ncua.gov and www.mycreditunion.gov.

Sincerely,


*The NCUA Consumer Assistance Center*

*The information contained in this electronic message may be privileged and confidential information intended only for the use of the individuals or entity named above. If you have received this communication in error, please notify the sender immediately and delete any and all copies of the electronic message. Thank you.*



**UNITED STATES POSTAL SERVICE.**

SUFFOLK
445 N MAIN ST
SUFFOLK, VA 23434-9998
(800)275-8777

06/12/2023                              10:10 AM

--------------------------------------------------

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Priority Mail® | 1 | | $9.65 |

Flat Rate Env
  Washington, DC 20551
  Flat Rate
  Expected Delivery Date
    Wed 06/14/2023
  Tracking #:
    9505 5149 9622 3163 7587 69
  Insurance                            $0.00
    Up to $100.00 included
Total                                    $9.65

--------------------------------------------------

Grand Total:                             $9.65

--------------------------------------------------

Debit Card Remit                         $9.65
  Card Name: VISA
  Account #: XXXXXXXXXXXX6604
  Approval #: 043825
  Transaction #: 544
  Receipt #: 042633
  Debit Card Purchase: $9.65
  ATD: A0000000980840   Contac
  A   US   VI

               rice checks offer
               and a Retail
               # you now.

  you         to 28777 (2USPS)
    the late   tab    Standard Message
  ti rate   may apply. You   can also
        .com USPS Track in
        1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



June 6, 2023

The Federal Reserve Board of Federal Reserve System
Complaint of Third Tier Civil Money Penalty from Federal
Reserve Act
Notice of Assessment

Dear The Federal Reserve Board of Federal Reserve System

I Parker;Tyler-James/agent on behalf of TYLER
PARKER/Principal am writing to The Federal Reserve Board of
Federal Reserve System to act upon a pattern of misconduct
performances Breach of Fiduciary Duty knowingly violated by
Anthony Duncan CFO of ABNB Federal Credit Union.

Once again this is an action to recover damages for civil money
penalty Breach of Fiduciary Duty. The installment agreement on
June 16, 2020 contracts interest owed to TYLER
PARKER/Principal from ABNB FCU to accredit the consumer
credit transaction. CFO Anthony Duncan of ABNB FCU is
obligated to operate in good faith transferring the principal
balance to the principal account and has not upheld his obligated
duties. I Parker;Tyler-James/agent on behalf of TYLER
PARKER/Principal expressed in writing multiple times by
endorsing with an allonge to the original security agreement that
securitize the rights owed to TYLER PARKER/Principal.

CFO Anthony Duncan of ABNB FCU Injuring the party
withholding Interest rightly belonging to TYLER
PARKER/Principal and wrongfully enforcing repossession of
TYLER PARKER/Principal property after I Parker;Tyler-
James/agent on behalf of TYLER PARKER/Principal accepted
all Title rights Interest and Equity for Off-set.

Parker; Tyler-James/Agent

April 5, 2023

National Credit Union Administration
Third Tier Civil Money Penalty
Notice of Assessment

To whom it may concern,

I Parker;Tyler-James/agent on behalf of TYLER
PARKER/Principal am writing to the Board of National Credit
Union Administration to act upon a pattern of misconduct
performances Breach of Fiduciary Duty knowingly violated by
Anthony Duncan CFO of ABNB Federal Credit Union.

Once again this is an action to recover damages for civil money
penalty breach of fiduciary duty. The installment agreement on
June 16, 2020 contracts duties obligated to two parties by a
signature. CFO Anthony Duncan of ABNB FCU is obligated to
operate in good faith to fulfill the dwelling account. Anthony
Duncan has not upheld his obligated duties causing
Parker;Tyler-James/agent unable to fulfill his duties due to
TYLER PARKER/Principal.

I Parker;Tyler-James/agent on behalf of TYLER
PARKER/Principal has Instructed ABNB FCU CFO Anthony
Duncan to operate in good faith transferring the principal
balance to the principal account. TYLER PARKER/Principal
receives interest every month from ABNB FCU to credit the
consumer credit transaction on June 16, 2020. Parker;Tyler-
James/agent on behalf of TYLER PARKER/Pricipal accepted all
titles rights interest and equity for Off-set.

Parker; Tyler-James/Agent

**Notice of default**
Reference to letter tracking #9505516147243019004877


I Parker;Tyler-James/ agent on behalf of TYLER PARKER/Principal
hereby accept all titles rights interest and Equity owed to Principal
TYLER PARKER. I hereby Instruct Anthony Duncan to Apply Principal
balance To account #4200256637 Each and every billing cycle for set-
Off

I hereby Instruct Anthony Duncan to Respond in writing within 5
business days to 4418 Gannon Road Portsmouth VA, 23703
Giving notice
That instructions haven been received and applied


If no response is received in 5 business days I can assume the
instructions have been completed


If you have any issues with these instructions please seek legal advice


By:     Parker; Tyler — James/Agent

# Federal Reserve Act

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances purchased under the provisions of said section 14, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

[12 USC 412. As amended by the acts of Sept. 7, 1916 (39 Stat. 754); June 21, 1917 (40 Stat. 236); Feb. 27,

# Federal Reserve Act

## Section 29. Civil Money Penalty

**(a) First Tier.** Any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who, violates any provision of section 22, 23A, or 23B, or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day during which such violation continues.

[12 USC 504(a). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(b) Second Tier.** Notwithstanding subsection (a), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who

1.   A. commits any violation described in subsection (a);
   B. recklessly engages in an unsafe or unsound practice in conducting the affairs of such member bank; or
   C. breaches any fiduciary duty;

2. which violation, practice, or breach--

   A. is part of a pattern of misconduct;
   B. causes or is likely to cause more than a minimal loss to such member bank; or
   C. results in pecuniary gain or other benefit to such party,

shall forfeit and pay a civil penalty of not more than $25,000 for each day during which such violation, practice, or breach continues.

[12 USC 504(b). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(c) Third Tier.** Notwithstanding subsections (a) and (b), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who--

1. knowingly--

   A. commits any violation described in subsection (a);
   B. engages in any unsafe or unsound practice in conducting the affairs of such credit union; or
   C. breaches any fiduciary duty; and

2. knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach,

shall forfeit and pay a civil penalty in an amount not to exceed the applicable maximum amount determined under subsection (d) for each day during which such violation,

practice, or breach continues.

[12 USC 504(c). As added by act of Nov. 10, 1978 (72 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(d) Maximum Amounts Of Penalties For Any Violation Described In Subsection (c).** The maximum daily amount of any civil penalty which may be assessed pursuant to subsection (c) for any violation, practice, or breach described in such subsection is--

1. in the case of any person other than a member bank, an amount to not exceed $1,000,000; and
2. in the case of a member bank, an amount not to exceed the lesser of --

    A. $1,000,000; or
    B. 1 percent of the total assets of such member bank.

[12 USC 504(d). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(e) Assessment, Etc.** Any penalty imposed under subsection (a), (b), or (c) shall be assessed and collected by

1. in the case of a national bank, by the Comptroller of the Currency; and
2. in the case of a State member bank, by the Board,

in the manner provided in subparagraphs (E), (F), (G), and (I) of section 8(i)(2) of the Federal Deposit Insurance Act for penalties imposed (under such section) and any such assessment shall be subject to the provisions of such section.

[12 USC 504(e). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(f) Hearing.** The member bank or other person against whom any penalty is assessed under this section shall be afforded an agency hearing if such member bank or person submits a request for such hearing within 20 days after the issuance of the notice of assessment. Section 8(h) of the Federal Deposit Insurance Act shall apply to any proceeding under this section.

[12 USC 504(f). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(g) Disbursement.** All penalties collected under authority of this paragraph shall be deposited into the Treasury.

[12 USC 504(g). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(h) Violate Defined.** For purposes of this section, the term "violate" includes any action (alone or with another or others) for or toward causing, bringing about, participating in, counseling, or aiding or abetting a violation.

[12 USC 504(h). As added by act of Aug. 9, 1989 (103 Stat. 470).]

**(i) Regulations.** The Comptroller of the Currency and the Board shall prescribe


**UNITED STATES POSTAL SERVICE.**

CHURCHLAND
3590 TOWNE POINT RD
PORTSMOUTH, VA 23703-9998
(800)275-8777

02/01/2023                                    10:23 AM

------------------------------------------------
Product                    Qty    Unit      Price
                                   Price
------------------------------------------------
Priority Mail®              1                $9.65
Flat Rate Env
    Chesapeake, VA 23320
    Flat Rate
    Expected Delivery Date
       Thu 02/02/2023
    Tracking #:
       9505 5161 4724 3032 0098 11
    Insurance                                $0.00
       Up to $100.00 included
Total                                        $9.65

Priority Mail®              1                $9.65
Flat Rate Env
    Las Vegas, NV 89193
    Flat Rate
    Expected Delivery Date
       Sat 02/04/2023
    Tracking #:
       9505 5161 4724 3032 0098 28
    Insurance                                $0.00
       Up to $100.00 included
Total                                        $9.65

Priority Mail®              1                $9.65
Flat Rate Env
    Memphis, TN 38118
    Flat Rate
    Expected Delivery Date
       Sat 02/04/2023
    Tracking #:
       9505 5161 4724 3032 0098 35
    Insurance                                $0.00
       Up to $100.00 included
Total                                        $9.65

Priority Mail®              1                $9.65
Flat Rate Env
    Memphis, TN 38118
    Flat Rate
    Expected Delivery Date
       Sat 02/04/2023
    Tracking #:
       9505 5161 4724 3032 0098 42
    Insurance                                $0.00
       Up to $100.00 included
Total                                        $9.65

Priority Mail®                               $9.65
Flat Rate Env
    Las Vegas, NV 89113
    Flat Rate
    Expected Delivery Date

**2nd Notice/Opportunity to Cure**

Reference to letter tracking #9505 5161 4724 3019 0048 77

I Parker;Tyler-James/ agent on behalf of TYLER PARKER/Principal hereby accept all titles rights interest and Equity owed to Principal TYLER PARKER. I hereby Instruct Anthony Duncan to Apply Principal balance To account #4200256637 Each and every billing cycle for set-Off

I hereby Instruct Anthony Duncan to Respond in writing within 5 business days to 4418 Gannon Road Portsmouth VA, 23703
Giving notice
That instructions haven been received and applied


If no response is received in 5 business days I can assume the instructions have been completed


If you have any issues with these instructions please seek legal advice


By:     Parker; Tyler-James / Agent

# Federal Reserve Act

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances purchased under the provisions of said section 14, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

[12 USC 412. As amended by the acts of Sept. 7, 1916 (39 Stat. 754); June 21, 1917 (40 Stat. 236); Feb. 27,

# Federal Reserve Act

## Section 29. Civil Money Penalty

**(a) First Tier.** Any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who, violates any provision of section 22, 23A, or 23B, or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day during which such violation continues.

[12 USC 504(a). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(b) Second Tier.** Notwithstanding subsection (a), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who

1.  A. commits any violation described in subsection (a);
    B. recklessly engages in an unsafe or unsound practice in conducting the affairs of such member bank; or
    C. breaches any fiduciary duty;

2. which violation, practice, or breach--

    A. is part of a pattern of misconduct;
    B. causes or is likely to cause more than a minimal loss to such member bank; or
    C. results in pecuniary gain or other benefit to such party,

shall forfeit and pay a civil penalty of not more than $25,000 for each day during which such violation, practice, or breach continues.

[12 USC 504(b). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(c) Third Tier.** Notwithstanding subsections (a) and (b), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who--

1. knowingly--

    A. commits any violation described in subsection (a);
    B. engages in any unsafe or unsound practice in conducting the affairs of such credit union; or
    C. breaches any fiduciary duty; and

2. knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach,

shall forfeit and pay a civil penalty in an amount not to exceed the applicable maximum amount determined under subsection (d) for each day during which such violation,

practice, or breach continues.

[12 USC 504(c). As added by act of Nov. 10, 1978 (72 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(d) Maximum Amounts Of Penalties For Any Violation Described In Subsection (c).** The maximum daily amount of any civil penalty which may be assessed pursuant to subsection (c) for any violation, practice, or breach described in such subsection is--

1. in the case of any person other than a member bank, an amount to not exceed $1,000,000; and
2. in the case of a member bank, an amount not to exceed the lesser of --

    A. $1,000,000; or
    B. 1 percent of the total assets of such member bank.

[12 USC 504(d). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(e) Assessment, Etc.** Any penalty imposed under subsection (a), (b), or (c) shall be assessed and collected by

1. in the case of a national bank, by the Comptroller of the Currency; and
2. in the case of a State member bank, by the Board,

in the manner provided in subparagraphs (E), (F), (G), and (I) of section 8(i)(2) of the Federal Deposit Insurance Act for penalties imposed (under such section) and any such assessment shall be subject to the provisions of such section.

[12 USC 504(e). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(f) Hearing.** The member bank or other person against whom any penalty is assessed under this section shall be afforded an agency hearing if such member bank or person submits a request for such hearing within 20 days after the issuance of the notice of assessment. Section 8(h) of the Federal Deposit Insurance Act shall apply to any proceeding under this section.

[12 USC 504(f). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(g) Disbursement.** All penalties collected under authority of this paragraph shall be deposited into the Treasury.

[12 USC 504(g). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(h) Violate Defined.** For purposes of this section, the term "violate" includes any action (alone or with another or others) for or toward causing, bringing about, participating in, counseling, or aiding or abetting a violation.

[12 USC 504(h). As added by act of Aug. 9, 1989 (103 Stat. 470).]

**(i) Regulations.** The Comptroller of the Currency and the Board shall prescribe



**Serving Everyone in Hampton Roads**

Tyler Parker
4418 Gannon Road
Portsmouth, VA 23703

January 26, 2023

Dear Mr. Parker,

This notice to confirm receipt of your letter received Friday
January 19, 2023. The information was passed on to our
collection staff. It is my understanding Ms. Sessoms from the
credit union contacted you and answer all your questions
concerning payment on the loan.

If you have any additional question, please direct them to Ms.
Sessoms @ 1-757-523-5300 ext 3424 or email
tsessoms@abnb.org

Thank you,

Anthony M. Duncan,
VP of Finance, ABNBFCU

Form **2848**
(Rev. January 2021)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative

➤ *Go to www.irs.gov/Form2848 for instructions and the latest information.*

| OMB No. 1545-0150 |
|---|
| **For IRS Use Only** |
| Received by: |
| Name _____ |
| Telephone _____ |
| Function _____ |
| Date ___/___/___ |

**Part I**  **Power of Attorney**

**Caution:** A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1**  **Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| TYLER PARKER | 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 |
| 4418 GANNON ROAD PORTSMOUTH VA, 23703 | Daytime telephone number |  Plan number (if applicable) |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2**  **Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Parker;Tyler-James | CAF No. _____ |
| | PTIN _____ |
| 4418 GANNON ROAD PORTSMOUTH VA, 23703 | Telephone No. _____ |
| | Fax No. _____ |
| **Check if to be sent copies of notices and communications** ☐ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | *PTIN* _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| **Check if to be sent copies of notices and communications** ☐ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | *Fax No.* _____ |
| **(Note: IRS sends notices and communications to only two representatives.)** | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| **(Note: IRS sends notices and communications to only two representatives.)** | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3**  **Acts authorized (you are required to complete line 3).** Except for the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| ABNB Business Services, L.L.C.   Account#4200256637 | 1040 1040v | 2023 |
| | | |
| | | |

**4**  **Specific use not recorded on the Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See *Line 4. Specific Use Not Recorded on CAF* in the instructions . . . . . . . . . . . . . . . . . ➤ ☐

**5a**  **Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information): ☑ Access my IRS records via an Intermediate Service Provider;
☑ Authorize disclosure to third parties;  ☑ Substitute or add representative(s);  ☑ Sign a return; _____

☐ Other acts authorized: _____

**For Privacy Act and Paperwork Reduction Act Notice, see the instructions.**    Cat. No. 11980J    Form **2848** (Rev. 1-2021)

Form 2848 (Rev. 1-2021)                                                                                                          Page **2**

  **b** **Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or any other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

    List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): _____

**6** **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this form. If you **do not** want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . ▶ ☐

    **YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7** **Taxpayer declaration and signature.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify I have the legal authority to execute this form on behalf of the taxpayer.

    ▶ **IF NOT C̶̶̶̶̶̶̶SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| | | |
|---|---|---|
| *Parker;Tyler-James* | 01/19/2023 | Attorney in fact |
| Signature | Date | Title (if applicable) |
| Parker;Tyler-James | TYLER PARKER | |
| Print name | Print name of taxpayer from line 1 if other than individual | |

| **Part II** | **Declaration of Representative** |
|---|---|

Under penalties of perjury, by my signature below I declare that:
- I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;
- I am subject to regulations in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;
- I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and
- I am one of the following:

  **a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

  **b** Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.

  **c** Enrolled Agent—enrolled as an agent by the IRS per the requirements of Circular 230.

  **d** Officer—a bona fide officer of the taxpayer organization.

  **e** Full-Time Employee—a full-time employee of the taxpayer.

  **f** Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).

  **g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the IRS is limited by section 10.3(d) of Circular 230).

  **h** Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). *See Special Rules and Requirements for Unenrolled Return Preparers in the instructions for additional information.*

  **k** Qualifying Student or Law Graduate—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student, or law graduate working in a LITC or STCP. See instructions for Part II for additional information and requirements.

  **r** Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

    ▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

**Note:** For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable) | Bar, license, certification, registration, or enrollment number (if applicable) | Signature | Date |
|---|---|---|---|---|
| D | Attorney in fact | | *Parker;Tyler-James* | 01/19/2023 |
| | | | | |
| | | | | |
| | | | | |

# Federal Reserve Act

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances *purchased under the provisions of said section 14, or gold certificates, or Special Drawing* Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

[12 USC 412. As amended by the acts of Sept. 7, 1916 (39 Stat. 754); June 21, 1917 (40 Stat. 236); Feb. 27,

I Parker;Tyler-James/ agent on behalf of TYLER PARKER/Principal
hereby accept all titles rights interest and Equity owed to Principal
TYLER PARKER. I hereby Instruct Anthony Duncan to Apply Principal
balance To account #4200256637 Each and every billing cycle for set-
Off

I hereby Instruct Anthony Duncan to Respond in writing within 5
business days to 4418 Gannon Road Portsmouth VA, 23703
Giving notice
That instructions have been received and applied


If no response is received in 5 business days I can assume the
instructions have been completed


If you have any issues with these instructions please seek legal advice


By: Parker; Tyler - James /Agent

06/16/2020

318191

*LAW* 553-VA-eps-14 7/14

70768

4800256637

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____    Contract Number __179976___

| Buyer Name and Address<br>(Including County and Zip Code)<br>TYLER JAMES PARKER<br>3250 PRICES FORK BLVD  APT 105<br>SUFFOLK, VA  23435<br>COUNTY: SUFFOLK CITY<br>757/746-2003 | Co-Buyer Name and Address<br>(Including County and Zip Code)<br>N/A | Seller-Creditor (Name and Address)<br>CHECKERED FLAG JAGUAR LAND ROVER<br>3033 VA BEACH BLVD<br>VIRGINIA BEACH, VA  23452<br>757/490 1111 |
|---|---|---|

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2016 | MERCEDES BEN C300 | 55SWF4KB7GU099621 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$   1500.00 is |
|---|---|---|---|---|
| 4.99 % | $ 4417.06 | $ 26218.94 | $ 30636.00 | $ 32136.00 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | 408.48 | Monthly beginning  07/31/2020 |
| N/A | N/A | N/A |

Or As Follows:   N/A

**Late Charge.** If payment is not received in full within __7__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**APPLICABLE LAW**
Federal law and the law of the state of our address shown in this contract apply to this contract.

**Returned Payment Charge:** If any check you give us is dishonored or electronic payment you make is returned unpaid, we may, at our option, charge you $ 50 .

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Any implied warranties arising from a written warranty or service contract are limited to the duration of such written warranty or service contract.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**VSI AND OPTIONAL INSURANCE**
Choice of Insurer. If vendor's single interest insurance is required (as indicated below), or if you desire optional insurance, such as credit life insurance or credit disability insurance, you have the right to use alternative coverage or to buy insurance elsewhere from the agent or insurer of your choice. You may also buy required physical damage insurance from the agent or insurer of your choice. Your choice of agent or insurer will not affect our decision to extend credit or your credit terms.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $_____ N/A _____** and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract. See above for more information.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract, along with all other documents signed by you in connection with the purchase of the vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract (i) only this contract and addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding.    Buyer Signs X _____    Co-Buyer Signs X ___N/A___
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See the rest of this contract for other important agreements.**

06/17/2020   02:03 pm

Buyer Initials X _____    Co-Buyer Initials X ___N/A___

*LAW 553-VA-eps-14 7/14 v1   Page 1 of 3*

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure the Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **Your right to refinance a balloon payment.** A balloon payment is any payment that is more than 10% greater than the regular or recurring installment payments. If you use the vehicle primarily for consumer purposes, you have the right to refinance a balloon payment over an extended period with additional payments. The additional periodic payments will not be more than 10% greater than the regularly scheduled installment payments.

2. YOUR OTHER PROMISES TO US
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.** You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.
   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK UP YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay you owe on this contract at once. Default means:
      • You pay any payment (plus any late charges) more than 10 days late or not at all;
      • You give us false, incomplete, or misleading information on a credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
   The amount you owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any collection costs we incur as the law allows.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

Buyer Initials X _____  Co-Buyer Initials X __N/A__

06/17/2020   02:03 pm
LAW 553-VA-eps-14 7/14 v1   Page 2 of 3

**ITEMIZATION OF AMOUNT FINANCED**

1 `Cash Price (including $____928.73____ sales tax)                        $ _22608.73_ (1)

2 Total Downpayment =
   Trade-In _____ N/A
   • (Year) _____ (Make) _____ (Model)
   Gross Trade-In Allowance                              $ ____N/A
   Less Pay Off Made By Seller                           $ ____N/A
   Equals Net Trade In                                   $ ____N/A
   + Cash                                                $ _1500.00
   + Other _____                  $ ____N/A
   (If total downpayment is negative, enter "0" and see 4I below)   $ _1500.00_ (2)

3 Unpaid Balance of Cash Price (1 minus 2)                  $ _21108.73_ (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A Cost of Optional Credit Insurance
      Paid to Insurance Company or Companies.
      Life                    $ _____ N/A
      Disability              $ _____ N/A $ ____N/A
   B Vendor's Single Interest Insurance
      Paid to Insurance Company(ies).                    $ ____N/A
   C Other Optional Insurance Paid to Insurance Company or Companies  $ ____N/A
   D Optional Gap Contract                                $ ____N/A
   E Official Fees Paid to Government Agencies            $ ____N/A
      1) to STATE OF VA    for GROSS RECEIPTS TX          $ __43.36
      2) to N/A            for N/A                        $ ____N/A
      3) to N/A            for N/A                        $ ____N/A
   F Government Taxes Not Included in Cash Price          $ _125.10
   G Government License and/or Registration Fees
                  REG FEE                                 $ __55.75
   H Government Certificate of Title Fees                 $ __17.00
   I Other Charges (Seller must identify who is paid and
      describe purpose.)
      1) to N/A        for Prior Credit or Lease Balance  $ ____N/A
      2) to CHECKERED  for PROC. FEE                      $ _699.00
      3) to JM&A       for SERVICE CONTRACT               $ 4170.00
      4) to N/A        for N/A                            $ ____N/A
      5) to N/A        for N/A                            $ ____N/A
      6) to N/A        for N/A                            $ ____N/A
      7) to N/A        for N/A                            $ ____N/A
      8) to N/A        for N/A                            $ ____N/A
      9) to N/A        for N/A                            $ ____N/A
      10) to N/A       for N/A                            $ ____N/A
   Total Other Charges and Amounts Paid to Others on Your Behalf  $ _5110.21_ (4)

5 Amount Financed (3 + 4)                                  $ 26218.94 (5)

OPTION: ☐ You pay no finance charge If the Amount Financed, item 5, is paid in full on or before
____N/A____ , Year __N/A__ . SELLER'S INITIALS __N/A__

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ____N/A____ Mos.  ____N/A____
                       Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____ N/A

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is authorized to sell such insurance in Virginia. Your choice will not affect our decision to extend credit or the terms of this contract. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest insurance is required is checked on page 1.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
   Credit Life $ _____ N/A
   Credit Disability $ _____ N/A
Insurance Company Name ____N/A
Home Office Address ____N/A

Credit life insurance and credit disability insurance are not required to obtain credit. You have the right to use alternate coverage or buy such insurance elsewhere. Your choice of insurer will not affect our decision to extend credit or the terms of this contract. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit Disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ _____ N/A _____ N/A
   Type of Insurance        Term
Premium $ _N/A_
Insurance Company Name ____N/A
Home Office Address ____N/A

☐ _____ N/A _____ N/A
   Type of Insurance        Term
Premium $ _N/A_
Insurance Company Name ____N/A
Home Office Address ____N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. Your choice of insurer will not affect our decision to extend credit or the terms of this contract.
I want the insurance checked above.
X N/A _____ N/A
Buyer Signature          Date
X N/A _____ N/A
Co-Buyer Signature       Date
THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.

## NO LIABILITY INSURANCE INCLUDED

**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.
                                                                    N/A
Buyer Signs X _____ Date _06/16/20_ Co-Buyer Signs X _____ Date _N/A_

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X ____N/A____ Address ____ N/A

Seller signs CHECKERED FLAG JAGUAR LAND ROVER Date _06/16/20_ By X _____ Title ____

Seller assigns its interest in this contract to AMPHIBIOUS BASE NAVAL BASE F.C.U. (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse

Seller CHECKERED FLAG JAGUAR LAND ROVER  By _____ Title ____

**ILAW** FORM NO. 553-VA-eps-14 (REV 7/14) U.S. PATENT NO D480,782
©2014 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

06/16/2020  02:03 pm
LAW 553-VA-eps-14 7/14 v1   Page 3 of 3

Dealer Name: **Checkered Flag Jaguar Land Rov**

Dealer Phone #: 757-490-1111
Dealer Fax #: 757-490-1111

**PLEASE PRINT - INCOMPLETE APPLICATIONS WILL NOT BE PROCESSED.**

INSTRUCTIONS:
You may apply for credit in your name alone, whether or not you are married.
(1) Please indicate whether you are applying for ☒ Individual Credit ☐ Joint Credit ☐ Community Property State ☐ Business Application
(2) ☒ If you are applying for individual credit in your name and relying on your own income or assets and not the income or assets of another person as the basis of repayment of the credit requested, complete only Section A.
(3) ☐ If you are applying for joint credit with another person, complete sections A and B. We intend to apply for joint credit.

|  | Applicant | Co-Applicant |
|---|---|---|

* If you are married and live in a community property state, please complete Section A about yourself and Section B about your spouse. You must sign this application. Your spouse must sign this application only if s/he wishes to be a Co-Applicant.

## A. APPLICANT INFORMATION

| Last Name | First Name | Middle Initial | Social Security Number | Birth Date |
|---|---|---|---|---|
| PARKER | TYLER | | 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 | 09/06/1998 |

| Address | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|
| 3250 PRICES FORK BLVD | 105 | | | SUFFOLK | VA | 23435 |

| Home Phone | Cell Phone | Residential Status | Time at Address | Rent/Mtg. Pmt. $ 600.00 |
|---|---|---|---|---|
| (704)998-8360 | | ☐ Homeowner ☒ Rent ☐ Family ☐ Other | 1 Yrs. 6 Mos. | |

| E-Mail Address | Driver's License No. | Driver's License State | Time at Previous Address |
|---|---|---|---|
| | | | 1 Yrs. Mos. |

| Previous Full Address (if less than 2 years) | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|
| 3828 TOWNE POINT RD | | | | SUFFOLK | VA | 23435 |

| Employer Name | Employment Type |
|---|---|
| COSTCO TIRE CENTER | ☒ Employed ☐ Unemployed ☐ Self-employed ☐ Military ☐ Retired ☐ Student ☐ Other |

| Salary | Salary Type | Occupation | Length of Employment | Work Phone Number * |
|---|---|---|---|---|
| 2600 | ☐ Weekly ☐ Bi-Weekly ☒ Monthly ☐ Annually | TIRE TECHNICIAN | 4 Yrs. Mos. | (757)746-2003 |

| Previous Employer Name | Previous Employment Type |
|---|---|
| | ☐ Employed ☐ Unemployed ☐ Self-employed ☐ Military ☐ Retired ☐ Student ☐ Other |

| Previous Occupation | Length of Employment | Previous Work Phone Number |
|---|---|---|
| | Yrs. Mos. | |

Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this obligation.

| Other Income (Monthly) | Source of Other Income | By Signing, you certify that the income entered on this Credit Application is accurate. |
|---|---|---|
| | | |

Comments

### AGREEMENT

The words "we," "us," "our" and "ours" as used below refer to us, the dealer, and to the financial institution(s) selected to receive your application. You understand and agree that you are applying for credit by providing the information to complete and submit this credit application. We may keep this application and any other application submitted to us and information about you whether or not the application is approved. You certify that the information on the application and in any other application submitted to us, is true and complete. You understand that false statements may subject you to criminal penalties. The words "you," "your" and "yours" mean each person submitting this application. You authorize us to submit this application and any other application submitted in connection with the proposed transaction to the financial institutions disclosed to you by us the dealers; in addition, in accordance with the Fair Credit Reporting Act, you authorize that such financial institutions may submit your applications to other financial institutions for the purpose of fulfilling your request to apply for credit. This application will be reviewed by the dealer and such financial institutions.
You agree that we may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with the proposed transaction and any update, renewal, refinancing, modification or extension of their financing. If you ask, you will be told whether a credit report was obtain one or more consumer credit reports on you at any time during the term of your financing.. If you ask, you will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which we or our affiliate obtained your credit report. You agree that the dealer and the financial institutions may verify your employment, pay, assets and debts, and that anyone receiving a copy of this is authorized to provide such dealer and financial institutions with such information. You further authorize the dealer and the financial institutions to gather whatever credit and employment history each considers necessary and appropriate in evaluating this application and any other applications submitted in connection with the proposed transaction. You understand that we will rely on the information in this credit application in making our decision. The dealer and the financial institutions may monitor and record telephone calls regarding your account for quality assurance, compliance, training, or similar purposes.

You consent to receive autodialed, prerecorded and artificial voice calls and text messages for servicing and collection purposes from us at the telephone number(s) provided in this credit application, including any cell phone numbers. The consent applies to the dealer, who is the originating creditor in this transaction, as well as any assignee who may purchase your credit contract. You agree that this consent applies regardless of whether you agree to receive telemarketing/sales calls and text messages as provided below.

You consent to receive autodialed, pre-recorded and artificial voice telemarketing and sales calls and text messages from or on behalf of dealer (or any financing source to which dealer assigns my contract) at the following number(s) (704)998-8360 including any cell phone numbers. You understand that this consent is not a condition of purchase or credit.

You opt in ☐     You do not opt in ☐

Signature of Applicant for election above: _____

Your dealer will inform you of the name and address of the financing sources to which this application shall be sent.

*BY SIGNING BELOW, YOU CERTIFY THAT YOU HAVE READ AND AGREE TO THE TERMS AND DISCLOSURES ON ALL PAGES OF THIS APPLICATION.*

X _____    _____
APPLICANT'S SIGNATURE     DATE June 17. 2020

Page 1 of 3
© 2017 Dealertrack, Inc. All rights reserved.
DT 6/17

Printed on 06/17/2020 14:06





Serving Everyone in Hampton Roads

## MILITARY LENDING ACT DISCLOSURES

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit.  In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent.  This rate must include, as applicable to the credit transaction or account:  The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

Please call at (800) 443-1141 option 7 to receive disclosures verbally.

| Applicant ℟ _Tiff. Cin_ | Date June 17 2020 |
|---|---|
| Co-Applicant X | Date |

03/2020

# Checkered Flag

PHONE (757) 490-1111 ALL LOCATIONS

**CUSTOMER NO. 1000768**
Deal Number: 70768

## BUYERS ORDER

Customer's Name(s):TYLER JAMES PARKER
3250 PRICES FORK BLVD
Address: SUFFOLK VA 23435

Date: 06/16/2020

County: SUFFOLK CITY

Home Phone: 757/746-2003     Cell Phone: 757/746-2003     E-Mail: TJP1998.TP@GMAIL.COM

| YEAR | MAKE | MODEL | BODY STYLE | COLOR |
|---|---|---|---|---|
| 2016 | MERCEDES BEN | C300 | SD | POLAR WHITE |

| VIN/SERIAL NO. | ODOMETER READING (See separate disclosure) | SALESPERSON | 2184 |
|---|---|---|---|
| 55SWF4KB7GU099621 | 47881 | TONY BRONKEMA | |

| THE VEHICLE IS ☐ NEW ☒ USED | TYPE OF TRANSACTION | IN SERVICE DATE | STOCK NO. |
|---|---|---|---|
| | ☐ PURCHASE    ☐ LEASE | 06/16/2020 | J400409D |

| ITEMIZATION OF OPTIONAL ACCESSORIES AND PRODUCTS | | PRICE OF VEHICLE (Including Freight Handling & Delivery) | 21680.00 |
|---|---|---|---|
| N/A | N/A | | N/A |
| N/A | N/A | | N/A |
| N/A | | | N/A |
| N/A | | TOTAL FOR OPTIONAL ACCESSORIES/PRODUCTS | N/A |
| WARRANTY STATEMENT: See Paragraph 7 on Reverse Side | | TOTAL PURCHASE PRICE | 21680.00 |

FOR AS IS SALE ONLY: I UNDERSTAND THAT THIS VEHICLE IS BEING SOLD "AS IS" WITH ALL FAULTS AND IS NOT COVERED BY ANY DEALER WARRANTY. I UNDERSTAND THAT THE DEALER IS NOT REQUIRED TO MAKE ANY REPAIRS AFTER I BUY THIS VEHICLE. I WILL HAVE TO PAY FOR ANY REPAIRS THIS VEHICLE WILL NEED.

X_____   X_____

☐ Used Vehicle Limited Warranty Applies. See Paragraph 7 on Reverse Side.

CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. SPANISH TRANSLATION: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

IF THIS BUYERS ORDER IS FOR A NEW VEHICLE WITH MORE THAN 750 MILES PLEASE READ AND INITIAL BELOW THIS NOTICE.

NOTICE: This new motor vehicle has accumulated mileage in excess of 750 miles as the result of use as a demonstrator and/or as the result of delivery to a prior prospective purchaser who never took title to it and who returned it.
_____ (Initial)

| PROCESSING FEE | 699.00 |
|---|---|
| VA. TITLE TAX | 928.73 |
| DEALER'S BUSINESS LICENSE TAX | 43.36 |
| LICENSE FEE | 40.75 |
| TITLE FEE | 15.00 |
| ON-LINE SYSTEMS FILING FEE | 17.00 |
| | N/A |
| | N/A |
| TOTAL DELIVERED PRICE | 23423.84 |

| TRADE-IN VEHICLE INFORMATION | | | |
|---|---|---|---|
| Year: | Make: | Model/Body Style: | Color: |
| VIN/Serial No: | | Odometer Reading (See separate disclosure): | |
| Trade-In Allowance: N/A | | Estimated Balance Owed & Lienholder: N/A | |

The Balance Owed on the Trade-In Vehicle is an Estimated Amount. Purchaser is Responsible for the Actual Balance Owed to payoff the lien. Please see Paragraph 6 on the reverse side.

| INITIAL DOWN PAYMENT | (1) | 1500.00 |
|---|---|---|
| TRADE-IN EQUITY | (2) | N/A |
| ADD'L DOWN PAYMENT (Due At Delivery) | (3) | N/A |
| | (4) | N/A |
| TOTAL DOWN PAYMENT (Lines 1+2+3+4) | | 1500.00 |
| SERVICE CONTRACT (Including Tax of $_____125.10) | | N/A 4295.10 |
| UNPAID BALANCE DUE | | 26218.94 |

UNLESS SPECIFICALLY INDICATED, **NO LIABILITY INSURANCE INCLUDED**
IF YOU ARE FINANCING THIS VEHICLE, PLEASE READ THIS NOTICE: YOU ARE PROPOSING TO ENTER INTO A RETAIL INSTALLMENT SALES CONTRACT WITH THE DEALER. PART OF YOUR CONTRACT INVOLVES FINANCING THE PURCHASE OF YOUR VEHICLE. IF YOU ARE FINANCING THIS VEHICLE AND THE DEALER INTENDS TO TRANSFER YOUR FINANCING TO A FINANCE PROVIDER SUCH AS A BANK, CREDIT UNION OR OTHER LENDER, YOUR VEHICLE PURCHASE DEPENDS ON THE FINANCE PROVIDER'S APPROVAL OF YOUR PROPOSED RETAIL INSTALLMENT SALES CONTRACT. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS APPROVED WITHOUT A CHANGE THAT INCREASES THE COST OR RISK TO YOU OR THE DEALER, YOUR PURCHASE CANNOT BE CANCELED. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS NOT APPROVED, THE DEALER WILL NOTIFY YOU VERBALLY OR IN WRITING. YOU CAN THEN DECIDE TO PAY FOR THE VEHICLE IN SOME OTHER WAY OR YOU OR THE DEALER CAN CANCEL YOUR PURCHASE. IF THE SALE IS CANCELED, YOU NEED TO RETURN THE VEHICLE TO THE DEALER WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR. ANY DOWN PAYMENT OR TRADE-IN YOU GAVE THE DEALER WILL BE RETURNED TO YOU. IF YOU DO NOT RETURN THE VEHICLE WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE OF CANCELLATION, THE DEALER MAY LOCATE THE VEHICLE AND TAKE IT BACK WITHOUT FURTHER NOTICE TO YOU AS LONG AS THE DEALER FOLLOWS THE LAW AND DOES NOT CAUSE A BREACH OF THE PEACE WHEN TAKING THE VEHICLE BACK. IF THE DEALER DOES NOT RETURN YOUR DOWN PAYMENT AND ANY TRADE-IN WHEN THE DEALER GETS THE VEHICLE BACK IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR, THE DEALER MAY BE LIABLE TO YOU UNDER THE VIRGINIA CONSUMER PROTECTION ACT. IF YOU ARE LEASING THIS VEHICLE, THE SAME PROCEDURES, RIGHTS, AND OBLIGATIONS APPLICABLE TO A RETAIL INSTALLMENT SALES CONTRACT APPLY TO THE LEASE.
AGREEMENT TO MEDIATE DISPUTES: Purchaser(s) and Dealer ("the Parties") agree to attempt to resolve any Dispute that should arise between them through non-binding mediation conducted by a neutral third party prior to initiating any other legal action. Either of the parties may initiate the mediation by contacting the American Arbitration Association at 1-800-778-7879, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org) or another established Mediation Organization. BY SIGNING BELOW, I ACKNOWLEDGE I HAVE READ PARAGRAPH 17 ON THE REVERSE SIDE AND AGREE TO ATTEMPT TO RESOLVE ANY DISPUTES WITH THE DEALERSHIP THROUGH NON-BINDING MEDIATION.
The front and back of this Buyers Order, along with other documents signed by Purchaser(s) in connection with this Buyers Order, comprise the entire agreement between the parties affecting this purchase. No oral agreements or understandings shall be binding upon the parties. Purchaser(s) acknowledges that he/she has been given the opportunity to review all documents prior to signing them and that he/she has not signed any documents in blank. By signing this Buyer's Order, Purchaser(s) further acknowledges that he/she is 18 years of age or older, has read all of the terms, and received a fully completed copy. THIS BUYERS ORDER IS NOT BINDING UPON EITHER DEALER OR PURCHASER UNTIL SIGNED BY AN AUTHORIZED DEALERSHIP REPRESENTATIVE. Until made effective, Purchaser(s) may cancel the Buyers Order and recover his/her Down Payment.

X_____   06/16/2020
Purchaser   Date

Accepted by Authorized Dealership Representative   Date   06/16/2020

_____   _____
Purchaser   Date

DealerCAR   CATALOG #8863779   © 2016 CDK Global, LLC   Virginia (04/18)

# Trade In/Loan/Retail Breakdown

# NADA
## Publication: 06/29/2020, Region: Eastern

2016 MERCEDES-BENZ C Class Sedan 4D C300 AWD I4 Turbo........... $16,925 / $15,250 / $20,225

## VIN: 55SWF4KB7GU099621
## Stock #: J400409D

MSRP................................................................................................ 40950
Weight.............................................................................................. 3594

## *** Itemized Add/Deducts ***

Adaptive Cruise Control................................................................ 225 / 225 / 250
Sport Package-C Class.............................................................. 1,250 / 1,250 / 1,400

Condition................................................................................... Clean
Total Value without mileage................................ $18,400 / $16,725 / $21,875
Mileage adjustment (47873) miles........................................ $1,625

*** NADA Trade In/Loan/Retail
$20,025 / $18,350 / $23,500

Jaguar Land Rover Virginia Beach - Lesley Synder

NADA publication for Virginia: Publication: 06/29/2020, Region: Eastern
Values are subjective opinions. NADA and vAuto, Inc. assume no responsibility for errors or omissions.
© vAuto, Inc. 2020, all rights reserved.

**DMV Now.com**
Virginia Department of Motor Vehicles
Post Office Box 27412
Richmond, Virginia 23269-0001

## ODOMETER DISCLOSURE STATEMENT

VSA 5 (07/25/2011)

### Do not use this form if a title exists for this vehicle.

**Purpose:** . Use this form to comply with state and federal laws that require the seller of a motor vehicle to state the odometer mileage upon transfer of ownership.

**Instructions:** Print or Type - Failure to complete or providing false information may result in fines and/or imprisonment. (Sections 409, 412 and 413 of the Motor Vehicle Information and Cost Savings Act of 1972, Section 46.2-629 of the Code of Virginia.)

| VEHICLE INFORMATION | | | | | |
|---|---|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER<br>55SWF4KB7GU099621 | | MAKE<br>MERCEDES | BODY TYPE<br>4D SDN<br>BENZ | MODEL<br>C | YEAR<br>2016 |

**SELLER CERTIFICATION**

Enter the odometer reading of the vehicle in the box to the right and check one of the following statements.
CHECK ONE BOX ONLY:

**ODOMETER READING (no tenths)**
47881

[X] Odometer reading entered is THE ACTUAL MILEAGE OF THE VEHICLE

[ ] Odometer reading entered is IN EXCESS OF ODOMETER'S MECHANICAL LIMITS

[ ] Odometer reading entered IS NOT THE ACTUAL MILEAGE. **(WARNING-Odometer Discrepancy)**

[ ] Vehicle model year is at least 10 years or older than the current calendar year and VEHICLE WAS EXEMPT FROM ODOMETER DISCLOSURE IN THE PRIOR STATE OF TITLE (Applicant must present the out-of-state title showing the exemption)

I certify and affirm that all information presented in this form is true and correct, that any documents I have presented to DMV are genuine, and that the information included in all supporting documentation is true and accurate. I make this certification and affirmation under penalty of perjury and I understand that knowingly making a false statement or representation on this form is a criminal violation.

| SELLER NAME (print)<br>Checkered Flag Jaguar Land Rover | SELLER SIGNATURE | | DATE (mm/dd/yyyy)<br>06/17/2020 |
|---|---|---|---|
| SELLER STREET ADDRESS<br>3033 Virginia Beach Blvd | CITY<br>Virginia Beach | STATE<br>VA | ZIP CODE<br>23452 |

**BUYER CERTIFICATION**

By signing below I acknowledge and certify that I have received a copy of this completed form.

| BUYER NAME (print)<br>TYLER JAMES PARKER | BUYER SIGNATURE | | DATE (mm/dd/yyyy)<br>06/17/2020 |
|---|---|---|---|
| BUYER STREET ADDRESS<br>3828 TOWNE POINT RD APT G | CITY<br>PORTSMOUTH | STATE<br>VA | ZIP CODE<br>23703 |

**dmv**Now.com
Virginia Department of Motor Vehicles
Post Office Box 27412
Richmond, Virginia 23269-0001

**APPLICATION FOR**
# CERTIFICATE OF TITLE AND REGISTRATION

VSA 17A (07/01/2019)

**PURPOSE:** Use this form to apply for a title and/or to register a passenger vehicle, motorcycle, truck, motor home (RV), or trailer.
**INSTRUCTIONS:** Complete this form and return to any DMV customer service center (CSC). DMV may request proof of any information provided.

## OWNER INFORMATION

| APPLICATION TYPE: Check one: ☐ Title   ☑ Title and Registration (license plates issued) | Electronic Title Option -- I want DMV to maintain an electronic certificate of title on file for this vehicle. (No paper title will be issued) ☐ YES  ☑ NO |
|---|---|

Check one: ☑ Vehicle is owned by individual(s).  ☐ Vehicle is business owned | If this application is for joint ownership, do you wish clear rights of ownership to be transferred to the surviving owner in the event of the death of either the owner or co-owner? ☐ YES  ☐ NO

| OWNER'S FULL LEGAL NAME (last, first, mi, suffix) OR BUSINESS NAME (if business owned) | TELEPHONE NUMBER | DMV CUSTOMER NUMBER / FEIN / SSN |
|---|---|---|
| PARKER, TYLER JAMES | 7577462003 | T61561220 |
| CO-OWNER'S FULL LEGAL NAME (last, first, mi, suffix) | TELEPHONE NUMBER | DMV CUSTOMER NUMBER / FEIN / SSN |
| | | |

**NOTE:** Owners (and Lessees if applicable) MUST provide their residence/home/business address where requested, this address can not be a P.O. Box. You must complete form ISD-01 if you would like your address(es) updated. | RESIDENCE/BUSINESS JURISDICTION SUFFOLK

| OWNER'S STREET ADDRESS (Apt # if applicable) | CITY | | STATE | ZIP CODE |
|---|---|---|---|---|
| 3250 PRICES FORK BLVD | SUFFOLK | | VA | 23435 |
| OWNER'S MAILING ADDRESS (if different from above) | CITY | | STATE | ZIP CODE |
| | | | | |
| CO-OWNER'S STREET ADDRESS (Apt # if applicable) | CITY | | STATE | ZIP CODE |
| | | | | |
| CO-OWNER'S MAILING ADDRESS (if different from above) | CITY | | STATE | ZIP CODE |
| | | | | |

| LOCATION WHERE VEHICLE IS PRINCIPALLY GARAGED ☑ CITY ☐ COUNTY ☐ TOWN OF SUFFOLK | Are any of the owners/lessees on active military duty or service? ☐ YES ☑ NO |
|---|---|

| IF YOU WOULD LIKE YOUR REGISTRATION RENEWALS SENT TO AN ADDRESS OTHER THAN YOUR RESIDENCE/BUSINESS ADDRESS, ENTER IT BELOW. |
|---|
| REGISTRATION MAILING ADDRESS - OPTIONAL | CITY | STATE | ZIP CODE |

## VEHICLE INFORMATION

| YEAR | MAKE | MODEL | BODY TYPE | VEHICLE IDENTIFICATION NUMBER (VIN) | NUMBER OF AXLES |
|---|---|---|---|---|---|
| 2016 | MERCEDES BENZ | C | 4D | 55SWF4KB7GU099621 | 2 |

| EMPTY WEIGHT | GVWR (single vehicle weight - manufacturer) | GROSS WEIGHT (combined truck + attached trailer) | GCWR (combined weight: truck + attached trailer) |
|---|---|---|---|
| 3594 | | | |

| FUEL TYPE ☑ GAS ☐ DIESEL ☐ ELECTRIC ☐ OTHER  OTHER FUEL TYPE | VEHICLE COLOR WHI | PRIMARY | IS THIS A LOW SPEED VEHICLE? ☐ YES ☑ NO | IS THIS A LOGGING VEHICLE? ☐ YES ☑ NO |
|---|---|---|---|---|
| IS VEHICLE STATE OR LOCALITY-OWNED? ☐ YES - enter agency code ☑ NO | DIVISION CODE | PREVIOUS TITLE NUMBER | | STATE |

## LIEN INFORMATION

| IS THERE A LIEN ON THIS VEHICLE? ☑ YES - YOU MUST COMPLETE THIS SECTION   ☐ NO - SKIP TO THE NEXT SECTION |
|---|

| DATE OF FIRST LIEN (mm/dd/yyyy) | LIENHOLDER NAME | LIENHOLDER CODE |
|---|---|---|
| 06/17/2020 | AMPHIBIOUS BASE NAVAL BASE F C U | |

| LIENHOLDER MAILING ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 830 GREENBRIER CIRCLE | CHESAPEAKE | VA | 23320 |

For additional liens, complete VSA 66 and attach to this form.

## SOURCE OF OWNERSHIP INFORMATION

| HOW WAS THIS VEHICLE SOLD TO YOU? (check one) ☑ USED ☐ NEW ☐ DEMONSTRATOR | PURCHASE DATE (mm/dd/yyyy) 06/16/2020 | RENTOR NUMBER | | VA DEALER LICENSE NUMBER 53890 |
|---|---|---|---|---|
| SALES PRICE $ 21,680.00 | PROCESSING FEE $ 699.00 | SALES AND USE TAX $ 928.73 | VEHICLE PURCHASED FROM Checkered Flag Jaguar Land Rover | DEALERS ONLY  MANUFACTURER REBATE/INCENTIVE |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 3033 Virginia Beach Blvd | Virginia Beach | VA | 23452 |

## LEASE INFORMATION (if applicable)

| LESSEE'S FULL LEGAL NAME (last, first, mi, suffix) | TELEPHONE NUMBER | DMV CUSTOMER NUMBER / FEIN / SSN |
|---|---|---|
| | | |
| LESSEE'S RESIDENCE/BUSINESS ADDRESS | CITY | STATE | ZIP CODE |

## ODOMETER STATEMENT

| ODOMETER READING (no tenths) | Federal and state laws require that you state the mileage in connection with the transfer of ownership. Failure to complete the statement or providing a false statement may result in fines and/or imprisonment |
|---|---|
| 47831 | |

I certify to the best of my knowledge that: (check one)  ☑ The odometer reading above is the ACTUAL MILEAGE of the vehicle.
☐ The odometer reading above is **NOT** the ACTUAL MILEAGE. **(Odometer discrepancy.)**
☐ The odometer reading above is IN EXCESS of its mechanical limits
☐ The model year is at least 10 years or older than the current calendar year and was exempt from odometer disclosure in the prior state of title. (Applicant must present the out-of-state title showing the exemption)    Page 2 / 3

LOG NUMBER

TITLE NUMBER

VSA 17A (07/01/2019) Page 2

## PERSONAL PROPERTY TAX RELIEF ELIGIBILITY

1. Answer the questions below to determine if your vehicle qualifies for car tax relief.

| | YES | NO |
|---|---|---|
| a. Is more than 50% of the vehicle's annual mileage used as a business expense for federal income tax purposes OR reimbursed by an employer? | ☐ | ☐ |
| b. Is more than 50% of the depreciation associated with the vehicle deducted as a business expense for federal income tax purposes? | ☐ | ☐ |
| c. Is the cost of the vehicle expensed pursuant to Section 179 of the Internal Revenue Service Code? | ☐ | ☐ |
| d. If the vehicle is leased by an individual, does the leasing company pay the tax without reimbursement from the individual? | ☐ | ☐ |

2. If you answered YES to ANY of the above questions, check Business Use. Your vehicle is considered by State law to have a business use and does NOT qualify for Personal Property Tax Relief. ☐ BUSINESS USE

3. If you answered NO to ALL of the above questions, check Personal Use and answer the question below.
☑ PERSONAL USE -- Is this vehicle held in a private trust for non-business purposes by an individual beneficiary?   ☐ YES ☐ NO

## INSURANCE CERTIFICATION

I/We certify that (check one):

☑ This vehicle is insured by a liability policy issued through an insurance company licensed to do business in Virginia and it will remain insured while registered, whether or not it is operated. Penalties are severe for violation of this requirement. Be advised that the amount of liability coverage required is higher for vehicles that are operated for hire.

NAME OF INSURANCE COMPANY
PROGRESSIVE

☐ This vehicle is not insured; therefore, I am remitting the applicable uninsured motor vehicle fee. (This fee provides no insurance coverage.) A vehicle must be insured with liability coverage when it is registered, and it must remain insured while registered, whether or not it is operated, or the uninsured motor vehicle fee must be paid. Penalties are severe for violation of this requirement.

## REGISTRATION INFORMATION

**NOTE:** Virginia offers more than 200 unique plates for our customers. Please visit www.dmvNow.com for a listing of special plates available. Not all plates are available for all vehicle types and some special plates require a certification form. Review our website for additional information.

REGISTRATION PERIOD (check one:)   ☑ ONE YEAR                    ☐ TWO YEARS ($2 discount)

☐ THREE YEARS ($3 discount - not for emissions area)    ☐ TRANSFER   UHW7351
                                                                       (enter plate number)

REGISTRATION TYPE (check one:)   ☑ PRIVATE       ☐ RENTAL          ☐ FOR HIRE (complete For Hire Information below)

☐ Trailer Permanent - (one time fee) select size:    ☐ Regular size plate    ☐ Small size plate (trailer gross weight must be 4,000 lbs or less)

## FOR HIRE INFORMATION

Check to indicate how the vehicle being registered will be used (check all that apply). If the vehicle will be used in **property carrier operations**, and those operations exclusively use passenger cars, motorcycles, autocycles, mopeds, or vehicles with a gross vehicle weight rating (GVWR) of 10,000 pounds or less, then registration for hire is not required.

— PASSENGER CARRIER OPERATIONS —
☐ Common Carrier - Regular Route ☐ Employee Hauler       ☐ Sight-seeing Carrier
☐ Common Carrier - Irregular Route ☐ Contract Passenger Carrier ☐ Non-Emergency Medical Transport
☐ Nonprofit/Tax-Exempt       ☐ Taxicab                 ☐ Exempt Operations - Passengers *
                              * You must also complete the For-Hire Vehicles Registration Request (MCS115)

— PROPERTY CARRIER OPERATIONS —
☐ Property Carrier *
☐ Household Goods Carrier *
☐ Exempt Operations - Property *

Do you hold a valid intrastate operating authority certificate/permit? ☐ YES ☐ NO
If no, and you are a passenger carrier you must also complete the For-Hire Vehicles Registration Request (MCS115).

## NOTICE

**PRIVACY NOTICE:** The information, including Social Security Number, is requested in accordance with Virginia Code §§46.2-623 and 46.2-629. Any person who refuses to supply the required information will be denied a certificate of title and/or registration. By signing this form, you authorize DMV's exchange of title and registration records with business, law enforcement, or government entities and you authorize DMV's exchange of title and registration records in accordance with Va. Code §§46.2-208 through 46.2-214 and 18 U.S.C. 2721.

**POWER OF ATTORNEY FOR NON-RESIDENT(S) AND CORPORATION(S) NOT DOMICILED IN VIRGINIA:** Pursuant to the provisions of Virginia Code §46.2-601, I/we appoint the Commissioner of the Department of Motor Vehicles of the Commonwealth of Virginia, to be my/our true and legal agent upon whom all legal processes against me/us may be served in any legal proceeding arising from the operation and/or use of any motor vehicle registered in my/our name(s) in the Commonwealth of Virginia. I/we agree that any lawful process or notice to me/us which is served on the Commissioner shall have the same legal effect as if served on me/us within the Commonwealth of Virginia.

## CERTIFICATION

I/We certify and affirm that all information presented in this form is true and correct, that any documents I/we have presented to DMV are genuine, and that the information included in all supporting documentation is true and accurate. I/We make this certification and affirmation under penalty of perjury and I/we understand that knowingly making a false statement or representation on this form is a criminal violation.

| APPLICANT NAME (print) | SIGNATURE OF APPLICANT | DATE (mm/dd/yyyy) |
|---|---|---|
| TYLER JAMES PARKER | *[signature]* | 06/16/2020 |
| CO-APPLICANT NAME (print) | SIGNATURE OF CO-APPLICANT | DATE (mm/dd/yyyy) |

## DMV USE ONLY

| PROOF OF ADDRESS (specify proof document(s) presented) | | | |
|---|---|---|---|
| | WITH LIEN? ☐ YES ☑ NO | | UMV FEE $ |
| SALES PRICE $21,680.00 | TITLE FEE $15.00 | IF HELD, REASON: | CSR STAMP |
| PROCESSING FEE $699.00 | TRANSFER FEE $0.00 | | Checkered Flag Jaguar L |
| SALES & USE TAX $928.73 | REGISTRATION FEE $40.75 | TOTAL $ 984.48 | SOURCE CODE: |

CUST#: 1000768
STK#: J400409D
70768

# PROOF OF INSURANCE / AUTHORIZATION TO RELEASE INSURANCE INFORMATION

## (TO BE USED WITH SECURITY AGREEMENT ON SALE OF VEHICLE)

Date **06/16/2020**

TO SELLER: **CHECKERED FLAG JAGUAR LAND ROVER**

**3033 VA BEACH BLVD  VIRGINIA BEACH  VA  23452**

The undersigned Buyer(s) acknowledges and represents that he/she currently possesses the following motor/vehicle insurance covering the vehicle described below that is the subject of a Security Agreement (the "Security Agreement") dated _____ **16th** / **June** , 20**2020**

| Year | Make | Model | Body Type | Vehicle Identification Number |
|---|---|---|---|---|
| 2016 | MERCEDES BENZ | C300 | SD | 55SWF4KB7GU099621 |

Insurance Carrier **PROGRESSIVE**          Agent **FLO**

**PO BOX 31260**                    **TAMPA FLORIDA 33631/FLORIDA 33631 8007764737**
ADDRESS OF AGENT - STREET                    CITY          STATE      ZIP      PHONE NUMBER

Policy Number: _____ **939428902** _____          Expiration Date: **12/17/2020**

☐ Bodily Injury/Property Damage Liability
☐ Physical Damage

$ ~~300° N/A~~ Deductible Comprehensive

$ ~~500.~~ **5.00⁴⁰** Deductible Collision

Lienholder/Loss Payee: _____ **AMPHIBIOUS BASE NAVAL BASE F C U**
Lienholder/Loss Payee's Address: _____ **830 GREENBRIER CIRCLE CHESAPEAKE VA 23320**

Buyer(s) authorizes the Agent and/or Insurance Carrier listed above to confirm the existence of and extent of the insurance coverage and to release such other policy information concerning the coverage, including a copy of the insurance policy, as may be requested by Seller. Buyer(s) acknowledges and represents that he will inform the Agency and/or Insurance Carrier of the above Lienholder/Loss Payee information.

Buyer(s) agrees to maintain physical damage insurance in the above amounts during the term of the Security Agreement, and understands that the failure to do so may result in the Lienholder force placing such insurance in accordance with the terms of the Security Agreement.

X _____          X _____
BUYER'S SIGNATURE  **TYLER JAMES PARKER**          CO-BUYER'S SIGNATURE

**LAW** FORM NO. 228RS-VA-ep (REV 206) © 1995 Reynolds and Reynolds
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.



# Carefree Car Protection

# MECHANICAL FAILURE SERVICE CONTRACT

1000768

## 1 VEHICLE

CONTRACT # P00014659013    FORM D1101119   T/C SRVN0102    VIN # 55SWF4KB7GU099621

YEAR 2016   MAKE MERCEDES   MODEL C CLASS   CURRENT ODOMETER READING 47881

## 2 DEALER

SELLING DEALER Checkered Flag Jaguar Land Rover    DEALER PHONE (757) 687-3528   DEALER # 20012

ADDRESS 2865 Virginia Beach Blvd    CITY Virginia Beach    STATE VA   ZIP 23452

LIENHOLDER AMPHIBIOUS BASE NAVAL BASE F C U   ADDRESS 830 GREENBRIER CIRCLE CHESAPEAKE VA 23320

## 3 CONTRACT HOLDER

FIRST NAME TYLER    LAST NAME PARKER    CO-BUYER NAME

ADDRESS 3250 PRICES FORK BLVD, APT 105    CITY SUFFOLK    STATE VA   ZIP 23435

(AREA CODE) TELEPHONE # (757) 746-2003    EMAIL ADDRESS

## 4 SERVICE CONTRACT INFORMATION

| | | | $0 (ZRD) | $100** (ZR1) | $100 (Z1H) | $250 (ZTF) | $500 (Z5H) |
|---|---|---|---|---|---|---|---|
| TERM 3 YEARS MILEAGE 36000 | | DEDUCTIBLE AMOUNT | | | | ✕ | |

SEE "SERVICE CONTRACT PERIOD" TO DETERMINE EXPIRATION DATE AND MILES
** REDUCING DEDUCTIBLE - WAIVED IF REPAIRS ARE MADE AT SELLING DEALER

| | POWERTRAIN (PTR) | GOLD (PGG) | PLATINUM (PNP) | | |
|---|---|---|---|---|---|
| COVERAGE PLAN SELECTED: | | | ✕ | | PAID IN FULL BY CONSUMER |

LIGHT DUTY COMMERCIAL USE COVERAGE  ONLY FOR VEHICLES WITH LESS THAN 35,000 MILES _____ (LCU)    PAID IN FULL BY LIENHOLDER

RIDESHARE COVERAGE _____ (RSH)  LIFT KIT COVERAGE _____ (LFK)

SERVICE CONTRACT PURCHASE DATE 6/16/2020    SERVICE CONTRACT PURCHASE PRICE 4170.00

*YOU UNDERSTAND THAT THE PURCHASE OF THIS SERVICE CONTRACT IS OPTIONAL, IS NOT REQUIRED IN ORDER TO OBTAIN FINANCING OR TO PURCHASE OR LEASE THIS VEHICLE, IS CANCELLABLE, HAS A STANDARD $100 DEDUCTIBLE AND MAY PROVIDE CERTAIN COVERAGES WHICH ALREADY MAY BE INCLUDED IN ANY APPLICABLE MANUFACTURER'S WARRANTY.*

*NOTICE TO SERVICE CONTRACT HOLDER: **YOU** are required to obtain authorization prior to beginning any repairs covered by this Service Contract except as noted in #2 of **HOW TO MAKE A CLAIM**. This Service Contract is subject to the **ARBITRATION** section contained herein. Please see **STATE AMENDMENTS** section for additional state provisions.*

☐ Washington Residents Only: By initialing this box, **YOU** acknowledge **YOU** have reviewed with Selling Dealer the sections of this Service Contract titled: **SERVICE CONTRACT PERIOD, SERVICE CONTRACT COVERAGE, MECHANICAL BREAKDOWN, VEHICLE COVERED PARTS, DEDUCTIBLE AND UNCOVERED COSTS, CANCELLATION, EXCLUSIONS FROM COVERAGE, YOUR RESPONSIBILITIES, HOW TO MAKE A CLAIM,** and **IMPLIED WARRANTY**. CONTRACTUAL LIABILITY POLICY # CL-02-091.

## 5 SIGNATURES

BY MY SIGNATURE BELOW, I CERTIFY THAT I HAVE READ, FULLY UNDERSTAND, AND AGREE TO BE BOUND BY ALL PAGES OF THIS CONTRACT, INCLUDING THE TERMS AND CONDITIONS, AVAILABLE ELECTRONICALLY AT http://jmtc.info/59599 OR IN PAPER COPY ON REQUEST FROM MY SELLING DEALER. I UNDERSTAND THAT THESE TERMS INCLUDE PROVISIONS DETAILING HOW TO MAKE A CLAIM (INCLUDING OBTAINING PRIOR AUTHORIZATION), YOUR RESPONSIBILITIES, ARBITRATION, COVERAGE, EXCLUSIONS FROM COVERAGE, CANCELLATION, AND STATE AMENDMENTS.

I FURTHER AGREE TO ACCEPT ELECTRONIC DELIVERY OF THIS CONTRACT AT THE WEBSITE IN THE PARAGRAPH ABOVE. I ALSO UNDERSTAND THAT I MAY REQUEST A PAPER COPY AT ANY TIME BY CONTACTING MY SELLING DEALER AND/OR FIDELITY WARRANTY SERVICES, INC. AT THE ADDRESS OR TELEPHONE NUMBER BELOW.



| 6/17/2020 | | 6/17/2020 |
|---|---|---|
| CONTRACT HOLDER SIGNATURE | SIGNATURE DATE | |
| 6/17/2020 | |  6/17/2020 |
| CO-BUYER SIGNATURE | SIGNATURE DATE | DEALER SIGNATURE    SIGNATURE DATE |

SERVICE COMPANY AND ADMINISTRATOR:

# FIDELITY WARRANTY SERVICES, INC.

P.O. BOX 8567 ▼ DEERFIELD BEACH, FL 33443 ▼ 1-800-327-5172 ▼ www.fidelitywarrantyservices.com

COPY 1 - FWS ▼ COPY 2 - DEALER ▼ COPY 3 - LIENHOLDER ▼ COPY 4 - CUSTOMER

F-NSRV (11/19) ▼ F-NSBN (11/19) ▼ D110 (11/19) ▼ SRVN0102

C/S# 1329

Page 1 of 6



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

**Statement of Account**

Statement Period
04/20/20 - 05/19/20

Access No. 10086959

Routing Number: 2560-7497-4

#BWNLLSV
#000000Q0P8VYU9A6#000MMY90F
TYLER J PARKER
3250 PRICES FORK BLVD APT 105
SUFFOLK VA 23435-3694

Questions about this Statement?
Toll-free in the U.S. 1-888-842-6328
For toll-free numbers when overseas,
visit **navyfederal.org/overseas/**
Collect internationally 1-703-255-8837

Say "Yes" to Paperless! View your
digital statements via Mobile or
Navy Federal Online Banking.

IMPORTANT NOTICE: Effective July 1, 2020, Navy Federal Credit Union is updating our funds availability policy to:
• Increase the amount of funds available on the first business day after a deposit is made in branch or by mail with personal or business checks from $200 to $225; and increase funds available immediately after a deposit is made at a Navy Federal ATM with personal or business checks from $200 to $225.
• Increase the amount of funds available from next-day items deposited into new accounts from $5,000 to $5,525; and increase the large deposit threshold from $5,000 to $5,525.
• Shorten the general hold time from seven to five business days; and add "on-us" checks (checks written from Navy Federal accounts) deposited in person at a Navy Federal branch to our transactions allowing next-day availability.
• Clarify that messaging on Navy Federal ATMs will notify members of its cutoff time; and provide an address for mailed deposits: P.O. Box 3100, Merrifield, VA 20119-3100.
• Clarify that this policy does not extend to deposits made into IRAs; and to indicate longer delays may apply to deposits made outside the continental U.S.

## Summary of your deposit accounts

| | Previous Balance | Deposits/ Credits | Withdrawals/ Debits | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| **Campus Checking** 7057342144 | $1,960.69 | $2,478.12 | $3,633.71 | $805.10 | $0.10 |
| **Membership Savings** 3073966651 | $1,083.30 | $1,846.09 | $770.93 | $2,158.46 | $0.53 |
| **Totals** | $3,043.99 | $4,324.21 | $4,404.64 | $2,963.56 | $0.63 |

REMITTANCE RECEIVED AFTER STATEMENT PERIOD WILL APPEAR ON YOUR NEXT STATEMENT

TYLER J PARKER

10086959

**DEPOSIT VOUCHER**
(FOR MAIL USE ONLY. DO NOT SEND CASH THROUGH THE MAIL
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL)

MARK "X" TO CHANGE
ADDRESS/ORDER
ITEMS ON REVERSE

| ACCOUNT NUMBER | ACCOUNT TYPE | AMOUNT ENCLOSED | |
|---|---|---|---|
| 7057342144 | Checking | | |
| 3073966651 | Savings | | |
| | | | |
| | | | |
| | | | |
| | TOTAL | | |

NFCU
PO BOX 3100
MERRIFIELD VA 22119-3100



⑊05705734214430739666510000000000000000000000000000000003

Page 2 of 6



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
04/20/20 - 05/19/20

Access No. 10086959

**Statement of Account**
For TYLER J PARKER

## Checking

### Campus Checking - 7057342144

Joint Owner(s):  NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|------|--------------------|-----------|------------|
| 04-20 | Beginning Balance | | 1,960.69 |
| 04-20 | POS Credit Adjustment 7232 Transaction 04-19-20 Cash App*cash Out Visa Direct CA | 9.75 | 1,970.44 |
| 04-20 | POS Debit- Debit Card 7232 04-17-20 Redbox *dvd Rental Oakbrook Ter IL | 2.12- | 1,968.32 |
| 04-20 | POS Debit- Debit Card 7232 Transaction 04-20-20 Churchland Pit Portsmouth VA | 2.84- | 1,965.48 |
| 04-20 | POS Debit- Debit Card 7232 04-17-20 Dollar Delites Suffolk VA | 4.66- | 1,960.82 |
| 04-20 | POS Debit - Debit Card 7232 Transaction 04-19-20 Raceway 6798 Newport News VA | 8.10- | 1,952.72 |
| 04-20 | POS Debit- Debit Card 7232 04-18-20 Zaxby's #43802 Newport News VA | 8.16- | 1,944.56 |
| 04-20 | POS Debit- Debit Card 7232 04-17-20 Chick-Fil-A #00523 757-465-8159 VA | 8.16- | 1,936.40 |
| 04-20 | POS Debit- Debit Card 7232 04-19-20 Costco Gas #0247 Newport News VA | 10.00- | 1,926.40 |
| 04-20 | POS Debit- Debit Card 7232 04-18-20 Cash App*rico 8774174551 CA | 20.00- | 1,906.40 |
| 04-20 | Transfer To Shares | 1,845.75- | 60.65 |
| | Tyler J Parker | | |
| 04-21 | Transfer From Shares | 114.26 | 174.91 |
| 04-21 | POS Debit- Debit Card 7232 04-20-20 Dollar Delites Suffolk VA | 3.71- | 171.20 |
| 04-21 | POS Debit- Debit Card 7232 04-19-20 Zaxby's #43802 Newport News VA | 7.59- | 163.61 |
| 04-22 | Transfer From Shares | 150.00 | 313.61 |
| | Tyler J Parker | | |
| 04-22 | POS Debit - Debit Card 7232 Transaction 04-22-20 7-Eleven Suffolk VA | 1.22- | 312.39 |
| 04-22 | POS Debit- Debit Card 7232 04-20-20 Zaxby's #43802 Newport News VA | 7.59- | 304.80 |
| 04-22 | POS Debit - Debit Card 7232 Transaction 04-21-20 Kroger #5 1017 Univers Suffolk VA | 12.50- | 292.30 |
| 04-22 | POS Debit - Debit Card 7232 04-21-20 Cash App*rico 8774174551 CA | 120.00- | 172.30 |
| 04-23 | POS Debit- Debit Card 7232 Transaction 04-22-20 Raceway 6798 Newport News VA | 4.22- | 168.08 |
| 04-23 | POS Debit - Debit Card 7232 Transaction 04-22-20 7-Eleven Newport News VA | 7.12- | 160.96 |
| 04-23 | POS Debit- Debit Card 7232 04-21-20 Zaxby's #43802 Newport News VA | 8.16- | 152.80 |




## CHANGE OF ADDRESS
PLEASE PRINT. USE BLUE OR BLACK BALL POINT PEN.

| RANK/RATE | NAME (FIRST | MI | LAST) | ACCOUNT NUMBERS AFFECTED |
|-----------|-------------|-----|-------|--------------------------|
| ADDRESS (NO. STREET) | | | | |
| CITY | | STATE | ZIP CODE | |
| SIGNATURE OF NAVY FEDERAL MEMBER | | | | |
| EFFECTIVE DATE (MO., DAY, YR.) | | HOME TELEPHONE NUMBER | | DAYTIME TELEPHONE NUMBER |



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
04/20/20 - 05/19/20

Access No. 10086959

**Statement of Account**
For TYLER J PARKER

## Checking

**Campus Checking - 7057342144**

Joint Owner(s): NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|------|-------------------|-----------|------------|
| 04-20 | Beginning Balance | | 1,960.69 |
| 04-20 | POS Credit Adjustment 7232 Transaction 04-19-20 Cash App*cash Out Visa Direct CA | 9.75 | 1,970.44 |
| 04-20 | POS Debit- Debit Card 7232 04-17-20 Redbox *dvd Rental Oakbrook Ter IL | 2.12- | 1,968.32 |
| 04-20 | POS Debit - Debit Card 7232 Transaction 04-20-20 Churchland Pit Portsmouth VA | 2.84- | 1,965.48 |
| 04-20 | POS Debit- Debit Card 7232 04-17-20 Dollar Delites Suffolk VA | 4.66- | 1,960.82 |
| 04-20 | POS Debit - Debit Card 7232 Transaction 04-19-20 Raceway 6798 Newport News VA | 8.10- | 1,952.72 |
| 04-20 | POS Debit- Debit Card 7232 04-18-20 Zaxby's #43802 Newport News VA | 8.16- | 1,944.56 |
| 04-20 | POS Debit - Debit Card 7232 04-17-20 Chick-Fil-A #00523 757-465-8159 VA | 8.16- | 1,936.40 |
| 04-20 | POS Debit- Debit Card 7232 04-19-20 Costco Gas #0247 Newport News VA | 10.00- | 1,926.40 |
| 04-20 | POS Debit- Debit Card 7232 04-18-20 Cash App*rico 8774174551 CA | 20.00- | 1,906.40 |
| 04-20 | Transfer To Shares<br>Tyler J Parker | 1,845.75- | 60.65 |
| 04-21 | Transfer From Shares | 114.26 | 174.91 |
| 04-21 | POS Debit- Debit Card 7232 04-20-20 Dollar Delites Suffolk VA | 3.71- | 171.20 |
| 04-21 | POS Debit- Debit Card 7232 04-19-20 Zaxby's #43802 Newport News VA | 7.59- | 163.61 |
| 04-22 | Transfer From Shares<br>Tyler J Parker | 150.00 | 313.61 |
| 04-22 | POS Debit - Debit Card 7232 Transaction 04-22-20 7-Eleven Suffolk VA | 1.22- | 312.39 |
| 04-22 | POS Debit- Debit Card 7232 04-20-20 Zaxby's #43802 Newport News VA | 7.59- | 304.80 |
| 04-22 | POS Debit - Debit Card 7232 Transaction 04-21-20 Kroger #5 1017 Univers Suffolk VA | 12.50- | 292.30 |
| 04-22 | POS Debit- Debit Card 7232 04-21-20 Cash App*rico 8774174551 CA | 120.00- | 172.30 |
| 04-23 | POS Debit - Debit Card 7232 Transaction 04-22-20 Raceway 6798 Newport News VA | 4.22- | 168.08 |
| 04-23 | POS Debit - Debit Card 7232 Transaction 04-22-20 7-Eleven Newport News VA | 7.12- | 160.96 |
| 04-23 | POS Debit- Debit Card 7232 04-21-20 Zaxby's #43802 Newport News VA | 8.16- | 152.80 |

Page 3 of 6



**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
04/20/20 - 05/19/20

Access No. 10086959

**Statement of Account**
For TYLER J PARKER

## Campus Checking - 7057342144 (Continued from previous page)

Joint Owner(s):  NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|------|--------------------|-----------|------------|
| 04-23 | POS Debit- Debit Card 7232 04-21-20 Chick-Fil-A #00523 757-465-8159 VA | 15.36- | 137.44 |
| 04-24 | POS Debit- Debit Card 7232 04-22-20 Zaxby's #43802 Newport News VA | 7.59- | 129.85 |
| 04-27 | POS Credit Adjustment 7232 Transaction 04-24-20 Zelle*gregory, Ni Visa Direct AZ | 10.00 | 139.85 |
| 04-27 | ATM Withdrawal 04-24-20 7Eleven-FC Suffolk VA | 20.00- | 119.85 |
| 04-27 | POS Debit- Debit Card 7232 04-24-20 Dunkin #350784 Q35 Chesapeake VA | 4.67- | 115.18 |
| 04-27 | POS Debit- Debit Card 7232 Transaction 04-26-20 7-Eleven Newport News VA | 6.13- | 109.05 |
| 04-27 | POS Debit - Debit Card 7232 Transaction 04-26-20 Costco Whse #0247 Newport News VA | 6.14- | 102.91 |
| 04-27 | POS Debit- Debit Card 7232 04-25-20 Zaxby's #57001 Suffolk VA | 8.09- | 94.82 |
| 04-27 | POS Debit- Debit Card 7232 04-25-20 Zaxby's #43802 Newport News VA | 8.16- | 86.66 |
| 04-27 | POS Debit - Debit Card 7232 Transaction 04-24-20 Harris Te 3575 Bridge Suffolk VA | 10.00- | 76.66 |
| 04-27 | POS Debit - Debit Card 7232 Transaction 04-24-20 7-Eleven Suffolk VA | 19.20- | 57.46 |
| 04-28 | POS Credit Adjustment 7232 Transaction 04-27-20 Zelle*gregory, Ni Visa Direct AZ | 30.00 | 87.46 |
| 04-28 | POS Debit- Debit Card 7232 04-26-20 Zaxby's #57001 Suffolk VA | 7.53- | 79.93 |
| 04-29 | Transfer From Shares | 1.67 | 81.60 |
| 04-29 | POS Debit - Debit Card 7232 Transaction 04-28-20 Raceway 6798 Newport News VA | 4.22- | 77.38 |
| 04-29 | POS Debit - Debit Card 7232 04-27-20 Outback 4759 Chesapeake VA | 35.62- | 41.76 |
| 04-30 | Deposit - ACH Paid From Costco Wholesale Cowholes1 01Afd4 | 891.86 | 933.62 |
| 04-30 | POS Debit- Debit Card 7232 04-28-20 Zaxby's #43802 Newport News VA | 7.59- | 926.03 |
| 04-30 | POS Debit- Debit Card 7232 04-29-20 Dollar Delites Suffolk VA | 7.79- | 918.24 |
| 04-30 | POS Debit- Debit Card 7232 04-29-20 Costco Gas #0247 Newport News VA | 10.02- | 908.22 |
| 04-30 | Dividend | 0.02 | 908.24 |
| 05-01 | POS Debit- Debit Card 7232 04-29-20 Zaxby's #43802 Newport News VA | 8.50- | 899.74 |
| 05-01 | POS Debit- Debit Card 7232 04-28-20 Chick-Fil-A #00523 757-465-8159 VA | 16.88- | 882.86 |
| 05-01 | Transfer To Loan Maurice Gregory Jr | 52.55- | 830.31 |
| 05-04 | POS Debit- Debit Card 7232 05-03-20 Dollar Delites Suffolk VA | 7.08- | 823.23 |
| 05-04 | POS Debit- Debit Card 7232 05-02-20 Zaxby's #43802 Newport News VA | 7.59- | 815.64 |
| 05-04 | POS Debit - Debit Card 7232 Transaction 05-03-20 Kroger #5 1017 Univers Suffolk VA | 17.98- | 797.66 |
| 05-05 | POS Debit- Debit Card 7232 05-03-20 Zaxby's #43802 Newport News VA | 7.59- | 790.07 |
| 05-05 | POS Debit- Debit Card 7232 05-04-20 Zelle*nikia Grego Visa Direct AZ | 600.00- | 190.07 |
| 05-06 | POS Debit - Debit Card 7232 Transaction 05-05-20 Raceway 6798 Newport News VA | 4.22- | 185.85 |
| 05-06 | POS Debit - Debit Card 7232 Transaction 05-05-20 Kroger Fu 1017 Univers Suffolk VA | 13.02- | 172.83 |
| 05-06 | POS Debit- Debit Card 7232 05-04-20 Chick-Fil-A #00523 757-465-8159 VA | 15.10- | 157.73 |
| 05-07 | POS Debit - Debit Card 7232 Transaction 05-06-20 Raceway 6798 Newport News VA | 4.73- | 153.00 |
| 05-07 | POS Debit- Debit Card 7232 05-06-20 Zaxby's #43802 Newport News VA | 7.59- | 145.41 |
| 05-07 | POS Debit - Debit Card 7232 Transaction 05-06-20 Kroger #5 1017 Univers Suffolk VA | 11.65- | 133.76 |
| 05-08 | ATM Withdrawal 05-07-20 7Eleven-FC Portsmouth VA | 60.00- | 73.76 |
| 05-11 | POS Debit- Debit Card 7232 05-08-20 Green Clean - Suff Suffolk VA | 5.00- | 68.76 |
| 05-11 | POS Debit- Debit Card 7232 05-10-20 McDonald's F24981 Suffolk VA | 6.06- | 62.70 |
| 05-11 | POS Debit - Debit Card 7232 Transaction 05-09-20 Rite Aid Store - 06744 Suffolk VA | 6.14- | 56.56 |
| 05-11 | POS Debit- Debit Card 7232 05-09-20 Zaxby's #43802 Newport News VA | 7.59- | 48.97 |
| 05-11 | POS Debit - Debit Card 7232 Transaction 05-09-20 7-Eleven Newport News VA | 10.00- | 38.97 |
| 05-12 | Transfer From Shares | 60.00 | 98.97 |



**NAVY FEDERAL**
Credit Union
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
04/20/20 - 05/19/20

Access No. 10086959

**Statement of Account**
For TYLER J PARKER

## Campus Checking - 7057342144

(Continued from previous page)

Joint Owner(s):  NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|------|--------------------|-----------|------------|
| | Tyler J Parker | | |
| 05-12 | POS Debit- Debit Card 7232 05-11-20 Dollar Delites Suffolk VA | 5.02- | 93.95 |
| 05-12 | POS Debit- Debit Card 7232 Transaction 05-11-20 Costco Whse #0247 Newport News VA | 6.14- | 87.81 |
| 05-12 | POS Debit- Debit Card 7232 05-10-20 Zaxby's #43802 Newport News VA | 7.59- | 80.22 |
| 05-12 | POS Debit- Debit Card 7232 05-11-20 Dunkin #301799 Q35 Chesapeake VA | 11.34- | 68.88 |
| 05-13 | POS Debit- Debit Card 7232 05-12-20 Dollar Delites Suffolk VA | 7.49- | 61.39 |
| 05-14 | Deposit - ACH Paid From Costco Wholesale Cownoles1 01Afdd | 1,135.56 | 1,196.95 |
| 05-14 | POS Debit- Debit Card 7232 05-13-20 Dairy Queen #19248 Chesapeake VA | 5.01- | 1,191.94 |
| 05-14 | POS Debit- Debit Card 7232 05-12-20 7-Eleven 23030 Portsmouth VA | 6.08- | 1,185.86 |
| 05-14 | POS Debit- Debit Card 7232 05-12-20 Chick-Fil-A #00523 757-465-8159 VA | 17.10- | 1,168.76 |
| 05-14 | POS Debit- Debit Card 7232 05-13-20 Kroger Fuel #3554 Suffolk VA | 21.07- | 1,147.69 |
| 05-15 | POS Debit- Debit Card 7232 05-14-20 Apple.Com/Bill 866-712-7753 CA | 0.99- | 1,146.70 |
| 05-15 | POS Debit- Debit Card 7232 05-14-20 Dollar Delites Suffolk VA | 6.79- | 1,139.91 |
| 05-15 | Transfer To Loan | 52.55- | 1,087.36 |
| | Maurice Gregory Jr | | |
| 05-18 | POS Credit Adjustment 7232 Transaction 05-16-20 Zelle*gregory, Ni Visa Direct AZ | 75.00 | 1,162.36 |
| 05-18 | ATM Withdrawal 05-15-20 Fcxe Churchland, VA ATM2 | 120.00- | 1,042.36 |
| 05-18 | POS Debit- Debit Card 7232 05-16-20 Zaxby's #43802 Newport News VA | 7.59- | 1,034.77 |
| 05-18 | POS Debit- Debit Card 7232 05-17-20 Dollar Delites Suffolk VA | 9.12- | 1,025.65 |
| 05-18 | POS Debit- Debit Card 7232 05-15-20 Dollar Delites Suffolk VA | 9.71- | 1,015.94 |
| 05-18 | POS Debit - Debit Card 7232 Transaction 05-15-20 Kroger #5 1017 Univers Suffolk VA | 10.58- | 1,005.36 |
| 05-18 | POS Debit - Debit Card 7232 Transaction 05-15-20 Michaels Stores 5091 1 Suffolk VA | 66.58- | 938.78 |
| 05-19 | POS Debit- Debit Card 7232 05-18-20 Dollar Delites Suffolk VA | 5.68- | 933.10 |
| 05-19 | POS Debit- Debit Card 7232 05-18-20 Dunkin #301799 Q35 Chesapeake VA | 8.00- | 925.10 |
| 05-19 | POS Debit- Debit Card 7232 05-18-20 Cash App*fonto 8774174551 CA | 120.00- | 805.10 |
| 05-19 | Ending Balance | | 805.10 |

*Average Daily Balance - Current Cycle: $410.84*
*Your account earned $0.02, with an annual percentage yield earned of 0.04%, for the dividend period from 04-01-2020 through 04-29-2020*

### Items Paid

| Date | Item | Amount($) | Date | Item | Amount($) |
|------|------|-----------|------|------|-----------|
| 05-18 | ATM | 120.00 | 04-27 | POS | 19.20 |
| 04-20 | POS | 2.84 | 04-27 | POS | 4.67 |
| 04-20 | POS | 4.66 | 04-28 | POS | 7.53 |
| 04-20 | POS | 8.10 | 04-29 | POS | 35.62 |
| 04-20 | POS | 8.16 | 04-29 | POS | 4.22 |
| 04-20 | POS | 8.16 | 04-30 | POS | 7.79 |
| 04-20 | POS | 10.00 | 04-30 | POS | 10.02 |
| 04-20 | POS | 20.00 | 04-30 | POS | 7.59 |
| 04-20 | POS | 2.12 | 05-01 | POS | 16.88 |
| 04-21 | POS | 7.59 | 05-01 | POS | 8.50 |
| 04-21 | POS | 3.71 | 05-04 | POS | 7.59 |
| 04-22 | POS | 7.59 | 05-04 | POS | 17.98 |
| 04-22 | POS | 12.50 | 05-04 | POS | 7.08 |
| 04-22 | POS | 120.00 | 05-05 | POS | 600.00 |
| 04-22 | POS | 1.22 | 05-05 | POS | 7.59 |
| 04-23 | POS | 7.12 | 05-06 | POS | 13.02 |
| 04-23 | POS | 8.16 | 05-06 | POS | 15.10 |
| 04-23 | POS | 15.36 | 05-06 | POS | 4.22 |
| 04-23 | POS | 4.22 | 05-07 | POS | 7.59 |
| 04-24 | POS | 7.59 | 05-07 | POS | 11.65 |
| 04-27 | POS | 6.13 | 05-07 | POS | 4.73 |
| 04-27 | POS | 6.14 | 05-11 | POS | 6.06 |
| 04-27 | POS | 8.09 | 05-11 | POS | 6.14 |
| 04-27 | POS | 8.16 | 05-11 | POS | 7.59 |
| 04-27 | POS | 10.00 | 05-11 | POS | 10.00 |



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
04/20/20 - 05/19/20

Access No. 10086959

**Statement of Account**
For TYLER J PARKER

(Continued from previous page)

## Items Paid

| Date | Item | Amount($) | Date | Item | Amount($) |
|------|------|-----------|------|------|-----------|
| 05-11 | POS | 5.00 | 05-15 | POS | 0.99 |
| 05-12 | POS | 6.14 | 05-18 | POS | 7.59 |
| 05-12 | POS | 7.59 | 05-18 | POS | 9.12 |
| 05-12 | POS | 11.34 | 05-18 | POS | 9.71 |
| 05-12 | POS | 6.02 | 05-18 | POS | 10.58 |
| 05-13 | POS | 7.48 | 05-18 | POS | 66.58 |
| 05-14 | POS | 8.08 | 05-19 | POS | 5.68 |
| 05-14 | POS | 17.10 | 05-19 | POS | 8.00 |
| 05-14 | POS | 21.07 | 05-19 | POS | 120.00 |
| 05-14 | POS | 5.01 | 04-27 | ATMO | 20.00 |
| 05-15 | POS | 6.79 | 05-08 | ATMO | 60.00 |

## Savings

### Membership Savings - 3073966651

Joint Owner(s):  NONE

| Date | Transaction Detail | Amount($) | Balance($) |
|------|-------------------|-----------|------------|
| 04-20 | Beginning Balance | | 1,083.30 |
| 04-20 | Transfer From Checking | 1,845.75 | 2,929.05 |
| | Tyler J Parker | | |
| 04-20 | Withdrawal By Cash 04-19-20 FC6C Denbigh,VA | 60.00- | 2,869.05 |
| 04-21 | Transfer To Checking | 114.26- | 2,754.79 |
| 04-22 | Transfer To Checking | 150.00- | 2,604.79 |
| | Tyler J Parker | | |
| 04-29 | Transfer To Checking | 1.67- | 2,603.12 |
| 04-30 | Withdrawal By Cash 04-29-20 FC6C Denbigh,VA | 180.00- | 2,423.12 |
| 04-30 | Dividend | 0.34 | 2,423.46 |
| 05-11 | Withdrawal By Cash 05-10-20 Fcxe Churchland, VA ATM2 | 60.00- | 2,363.46 |
| 05-12 | Transfer To Checking | 60.00- | 2,303.46 |
| | Tyler J Parker | | |
| 05-13 | Withdrawal By Cash 05-12-20 Pnc Bank Chesapeake VA | 120.00- | 2,183.46 |
| 05-14 | Withdrawal By Cash 05-14-20 P244776 Suffolk VA | 24.00- | 2,159.46 |
| 05-15 | ATM Fee 05-14-20 P244776 Suffolk VA | 1.00- | 2,158.46 |
| 05-19 | Ending Balance | | **2,158.46** |

*Your account earned $0.34, with an annual percentage yield earned of 0.25%, for the dividend period from 04-01-2020 through 04-29-2020*

Page 6 of 6



**NAVY FEDERAL**
**Credit Union**
PO Box 3000 • Merrifield, VA • 22119-3000
navyfederal.org

Statement Period
04/20/20 - 05/19/20

Access No. 10086959

**Statement of Account**
For TYLER J PARKER

**Disclosure Information**
* The interest charge on the Checking Line of Credit advances begins to accrue on the date an advance is posted to your account and continues to accrue daily on the unpaid principal balance.
* We calculate the interest charge on your account by applying the daily periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances or fees, and subtract any payments, credits, or unpaid interest charges.
* You may also determine the amount of interest charges by multiplying the "Balance Subject to Interest Rate" by the number of days in the billing cycle and the daily periodic rate. The "Balance Subject to Interest Rate" disclosed in the Interest Charge Calculation table is the "average daily balance." To calculate the "average daily balance" add up all the "daily balances" for the billing cycle and divide the total by the number of days in the billing cycle.
* If there are two or more daily periodic rates imposed during the billing cycle, you may determine the amount of interest charges by multiplying each of the "Balances Subject to Interest Rate" by the number of days the applicable rate was in effect and multiplying each of the results by the applicable daily periodic rate and adding the results together.

**What to Do if You Think You Find a Mistake on Your Statement**
**Errors Related to a Checking Line of Credit Advance**
If you think there is an error on your statement, write to us at
Navy Federal Credit Union, PO Box 3000, Merrifield, VA 22119-3000; or by fax, 1-703-206-4244.
You may also contact us on the Web: navyfederal.org.
In your letter, give us the following information:
* **Account Information:** Your name and account number.
* **Dollar amount:** The dollar amount of the suspected error.
* **Description of problem:** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors in writing (or electronically). You may call us, but if you do, we are not required to investigate any potential error, and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
* We cannot try to collect the amount in question or report you as delinquent on that amount.
* The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
* While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
* We can apply any unpaid amount against your credit limit.
If we take more than 10 days in resolving an electronic transfer inquiry, we will provisionally credit your account for the amount in question so that you will have access to the funds during the time of our investigation.
**Errors Within Your Checking Account, Money Market Savings Account, or Savings Account**
In case of errors or questions about your electronic transfers telephone us at 1-888-842-6328, write us at the address provided above, or through Navy Federal Online Banking as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.
* Tell us your name and account number (if any).
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
* Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will provisionally credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.
**Payments**
Your check must be payable to Navy Federal Credit Union and include your Checking Line of Credit account number. Include the voucher found at the bottom of your statement and mail the enclosed envelope to: Navy Federal Credit Union, PO Box 3100, Merrifield, VA 22119-3100. Payments received by 5:00 pm Eastern Time at the mail address above will be credited the same day. Mailed payments for your Checking Line of Credit account may not be commingled with funds designated for credit to other Navy Federal Credit Union accounts.

 

## ABNB Federal Credit Union

✔ Approved



Checkered Flag Jaguar Land Rover 581343

*318191RVA*

### Applicant(s)

| | |
|---|---|
| Applicant Name | **TYLER PARKER** |
| Co-Applicant Name | – |

### Financing Information

| | |
|---|---|
| Product | **Retail** |
| Amount (includes TT&L) | **$21,940.00** |
| Term | **72 mos** |
| Acquisition Fee | – |
| Buy Rate | **4.99 %** |
| LTV Ratio | **105.90** |
| FICO Score | – |
| Tier Level | – |

### Reference

| | |
|---|---|
| Phone | **(757) 523-5350 Ext. 3608** |
| Email | **DIRECTLENDING@ABNB.ORG** |
| Fax | - |
| Lender Support | - |
| Ref ID | **318191** |
| Decision Date | **06/16/2020 4:05 p.m.** |
| Analyst | **Jacqueline Craig** |

### Vehicle

| | |
|---|---|
| Condition | **USED** |
| Y/M/M | **2016/MERCEDES-BENZ/C-CLASS** |
| Trim | **4DR SDN C 300 4MATIC** |
| VIN | – |
| Mileage | **47,873** |

### Stipulations

1. Loan Contract and Title info is the same
2. Qualifies for Field of Membership (FOM) - will not be funded if outside of guides
3. Printed Call-Back including Buyer Structure (followed)
4. Back-end products to be sold at dealer discretion within reason to unpaid balance
5. Maximum sales price not to exceed 100% retail book or MSRP with no trade

### Additional Information

–

### Comments

–

# INDIRECT LOAN COVER SHEET

| | | | |
|---|---|---|---|
| Application # | 318191 | ABNB Account # | 10018166 |
| Contract Date | | Receipt Date | |
| Primary Name | T. Parker | Loan Term | |
| Joint Name | | Rate | |
| Dealership Name | Checkered Flag Jaguar Land Rover | | |
| Loan Officer | JC | Exception Code | |
| Stipped By | [illegible] Verified by | Credit Score | 699 |

| | YES | NO | N/A | WAIVED |
|---|---|---|---|---|
| Contract signed by dealer & all buyers | ✓ | | | |
| Contract assigned to ABNB | ✓ | | | |
| Valid DL for all applicants/current LES with expired out of State DL for military | ✓ | | | |
| Signed original credit application | ✓ | | | |
| Social Security # on credit report matches application | ✓ | | | |
| Verify proof of address | ✓ | | | |
| CDS/Rate/Rank/Dept/Phone # | | | ✓ | |
| Signed copy of buyers order | ✓ | | | |
| Contracted vehicle same as application | ✓ | | | |
| Dealer invoice or book-out sheet | ✓ | | | |
| LTV of 86% matches callback | ✓ | | | |
| Loan terms match approval | ✓ | | | |
| Odometer statement -or- matches Buyers order and DMV paperwork | ✓ | | | |
| Signed DMV paperwork | ✓ | | | |
| Signed agreement to furnish insurance | ✓ | | | |
| Warranty paperwork | ✓ | | | |
| Warranty & L/D charges within guides | ✓ | | | |
| GAP paperwork | | | ✓ | |
| GAP charges within guides | | | ✓ | |
| Complete signed membership card | ✓ | | | |
| Eligibility for membership | ✓ | | | |
| VOI (if requested) | | | ✓ | |

OTD% [illegible] 112

**Missing Stipulations:**

1. [illegible] on Buyers Order ✓
2.
3.
4.

CERTIFICATION OF VITAL RECORD

# COMMONWEALTH OF VIRGINIA

DEPARTMENT OF HEALTH - DIVISION OF VITAL RECORDS

STATE FILE NUMBER:     145-98-058553

NAME OF REGISTRANT:     TYLER JAMES PARKER

DATE OF BIRTH:     ███████████     SEX:  MALE

PLACE OF BIRTH:     FRANKLIN, VIRGINIA

MAIDEN NAME OF MOTHER:     WANDA ELAINE MORRIS

MOTHER'S PLACE OF BIRTH:  FLORIDA     AGE: 23

NAME OF FATHER:     JAMES THOMAS PARKER JR

FATHER'S PLACE OF BIRTH:  TEXAS     AGE: 26

DATE RECORD FILED: SEPTEMBER, 1998 DATE ISSUED:  DECEMBER 8, 1998

This is to certify that this is a true and correct reproduction or abstract of the official record filed with the Virginia Department of Health, Richmond, Virginia.

DATE ISSUED

*Deborah Little-Bowser*

Deborah Little-Bowser, State Registrar

Any reproduction of this document is prohibited by statute. Do not accept unless on security paper with seal of Vital Statistics clearly embossed. Section 32.1-272, Code of Virginia, as amended.

VS 15B



Cooper, Spong & Davis, P.C.
200 High Street, Suite 500
P.O. Box 1475
Portsmouth, VA 23705-1475
(757) 391-3115 phone
from 9am to 5pm EST Monday to Friday

To:    Tyler James Parker
       4418 Gannon Rd
       Portsmouth VA 23703

Reference: 20230343.001

June 27, 2023

**Cooper, Spong & Davis, P.C. is a debt collector.** We are trying to collect a debt that you owe to ABNB Federal Credit Union . This is an attempt to collect a debt. We will use any information you give us to help collect the debt.

## Our information shows:

You received a loan, secured by the 2016 Mercedes Benz C300, from ABNB Federal Credit Union with account number 4200256637

| | | | |
|---|---|---|---|
| As of 03/16/2023, you owed: | | $ | 22,155.62 |
| Between 03/16/2023 and today: | | | |
| You were charged this amount in interest: | + | $ | 0.00 |
| You were charged this amount in fees: | + | $ | 0.00 |
| You paid or were credited this amount toward the debt: | − | $ | 0.00 |
| **Total amount of the debt now:** | | **$** | **22,155.62** |

## How can you dispute the debt?

- Call or write to us by August 11, 2023 to dispute all or part of the debt. If you do not, we will assume that our information is correct.

- If you write to us by August 11, 2023 we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

## What else can you do?

- Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by August 11, 2023 we must stop collection until we send you that information. You may use the form below or write to us without the form.

- Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.

- Contact us about your payment options.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Mail this form to:
Cooper, Spong & Davis, P.C.
200 High Street, Suite 500
P.O. Box 1475
Portsmouth, VA 23705

## How do you want to respond?

*Check all that apply:*
☐ I want to dispute the debt because I think:
    ☐ This is not my debt
    ☐ The amount is wrong
    ☐ Other (please describe on reverse or attach additional information).
☐ I want you to send me the name and address of the original creditor.
☐ I enclosed this amount:  $ _____

Make your check payable to *Cooper, Spong & Davis, P.C.* Include the reference number 20230343.001.

Tyler James Parker
4418 Gannon Rd

**ABNB**
Federal Credit Union

Insurance Service Center
830 Greenbrier Circle
Chesapeake, VA 23320-2624

You must visit
**myinsuranceinfo.com**
to quickly resolve this matter.

Reference ID:
7259-7510-2707-088



PHCDDK00701412 - 260295
ΙΙιΙΙιιΙΙιΙΙΙΙΙΙΙΙΙΙΙιιΙΙΙΙΙιιΙΙΙΙΙ
TYLER PARKER
4418 GANNON RD.
PORTSMOUTH, VA 23703

January 21, 2023

Dear Tyler:

The Creditor Placed Insurance coverage we purchased is due to expire. Our records indicate that we don't have evidence of insurance coverage on file for this collateral which is required by the terms of your loan agreement.

**2016**
Year

**Mercedes-Benz**
Make

**C Class**
Model

**55SWF4KB7GU099621**
VIN

To resolve this matter, you can either call your insurance agent and request a policy be sent to us or:

Visit **myinsuranceinfo.com** and provide your insurance coverage with the following information:

To help speed up the process, please have your insurance policy on hand when you visit the website.

- **Your loan reference ID number: 7259-7510-2707-088**
- **Your insurance policy information listing ABNB Federal Credit Union as the Lienholder or Loss Payee**

  > **Comprehensive deductible not exceeding $500.00**
  > **Collision deductible not exceeding $500.00**

If you don't provide proof of insurance, ABNB Federal Credit Union may purchase insurance coverage for you effective 2/13/2023 and add the annual premium amount of $3,003.00 to your principal loan balance. Visit **myinsuranceinfo.com** to confirm your evidence of insurance.

Sincerely,

ABNB Federal Credit Union
Insurance Service Center

P.S. If you have questions about this notice, you may call us at 1(800)998-0762, Monday-Friday, 9am-7pm, EST and Saturday, 9am-6pm EST.

**THE COLLATERAL PROTECTION PHYSICAL DAMAGE POLICY – VIRGINIA**
**INDIVIDUAL POLICY CERTIFICATE**
**BY**
**MIC GENERAL INSURANCE CORPORATION**
**(A STOCK INSURANCE COMPANY)**
**5630 University Parkway**
**Winston-Salem, NC 27105**

## DECLARATIONS – INDIVIDUAL CERTIFICATE

### THIS INSURANCE IS NON-TRANSFERABLE



**Individual Certificate No. MQS0529625**
**ITEM ONE A:** Retail Purchaser or Borrower - **Owner**
Tyler Parker
4418 Gannon Rd.
Portsmouth, VA 23703

Loan Number: 4200256637

**Master Policy No. 50276579**
**ITEM ONE:** Named Insurer - **Lienholder**
ABNB Federal Credit Union
830 Greenbrier Circle
Chesapeake, VA 23320-2624

Date of Issue: February 14, 2023

**ITEM TWO:** Coverage Period:
FROM: 02/13/2023     TO: 02/13/2024     Term in Mos. 12
12:01 A.M. Standard time at the location of the insured **owner** as stated above.

**ITEM THREE:** Schedule of Coverages Provided:
Part 1. A. Comprehensive Coverage and B. Collision Coverage, both are provided.

**OWNERS DEDUCTIBLE $200 EACH LOSS**

Part 2. Additional coverage – where an [x] appears in the box [ ] beside the coverage endorsement and a premium is shown as charged additional coverage is provided under the terms of such endorsement.

PREMIUM

[X] P. Worldwide Protection

$ incl_____ Per _____

**ITEM FOUR:** Description of Property: Year, Make and Model Name, Identification Numer

2016 Mercedes-Benz C Class 55SWF4KB7GU099621

PREMIUM IS BASED ON A COVERAGE AMOUNT OF:     $19,549.57

PREMIUM:     $3,003.00

THIS POLICY DOES NOT PROVIDE PROTECTION AGAINST **BODILY INJURY** OR **PROPERTY DAMAGE LIABILITY** NOR DOES IT PROVIDE PERSONAL INJURY PROTECTION BENEFITS, AND WILL NOT FULFILL THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY OR NO-FAULT LAW.

COVERAGE UNDER THIS POLICY PROTECTS THE INTEREST OF YOU THE INSURED LIENHOLDER, AND ONLY LIMITED PROTECTION FOR THE INTEREST OR EQUITY OF THE RETAIL PURCHASER, BORROWER, OR **OWNER** IS PROVIDED.

Agent Name: Allied Solutions, LLC
Agent Address: 350 Veterans Way, Suite 200, Carmel, IN 46032

**COLLATERAL PROTECTION PHYSICAL DAMAGE POLICY – VIRGINIA**
**INDIVIDUAL POLICY CERTIFICATE**
**MIC GENERAL INSURANCE CORPORATION**

In return for the payment of the premium and subject to all of the terms of this policy, **we** agree with **you** and **owner** as follows:

<u>**WORDS AND PHRASES WITH SPECIAL MEANINGS - READ THEM CAREFULLY**</u>

The following words and phrases have special meaning throughout this policy and appear in BOLD FACE TYPE when used:

1. **"You"** and **"Your"** means the lender, person, or organization shown as the named insured in ITEM ONE of the Declarations.
2. **"We"**, **"us"**, and **"our"** means the company providing insurance.
3. **"Owner"** means the retail purchaser or borrower to which the named insured has extended credit shown as insured in ITEM ONE A, of the Declarations of this Individual Policy Certificate.
4. **"Property"** means the items specifically described in ITEM FOUR of the Declarations of this Individual Policy Certificate. It also includes it's equipment as included in the retail purchase price which:
   (1) **You** have extended credit; and
   (2) Is permanently installed or fastened by bolts, screws, or welding in or upon the described item.
5. **"Loss"** means direct and accidental damage or **loss**.
6. **"Date of Loss"** is the date **property** is damaged or stolen.
7. 7. **"Outstanding Balance"** means the amount due you as represented by the **owner's** unpaid balance less:
   (1) Unearned interest or carrying charges (computed on the Rule of 78's); or
   (2) Unearned insurance premiums; or
   (3) Collection expenses and late charges or either added after the effective date of this Individual Policy Certificate; or
   (4) Payments more than 60 days past due, but in no event after all deductions, shall an amount less than $1,000 be used pertaining to an **outstanding balance** for purposes of computing the insurance loss with respect to an **owner**.

**PROPERTY WHICH IS COVERED PROPERTY**
ITEM FOUR of the Declarations shows the **property** that is covered for each of the Coverages. No coverage exists unless an [X] appears in the box [ ] and a premium is shown as charged for Worldwide Protection, Endorsement SCC-CPPD-Va. 24. (11-79).

**WHEN AND WHERE THIS POLICY APPLIES**
We cover losses which occur during the policy period:

1. In the United States of America, its territories, possessions, Puerto Rico, or Canada; or
2. While the covered property is being transported between any of these places; or
3. The policy is extended to provide limited coverage in the Republic of Mexico. This coverage is extended only when the insured property is within the Republic of Mexico provided the place of residence of the owner was established within the United States at the time coverage attaches and the insured property is principally located and used within the United Sates. It is understood and agreed that in the event of a loss of or damage to insured property while in Mexican territory, the adjustment of the claim for such loss shall be at the nearest point in the United States where such adjustment can be made. It is further expressed and understood that the cost of towing, transporting, salvage, or storage of any insured property within Mexican territory shall not be recoverable hereunder and is not a contingency insured against. The loss will be paid for in the United States.

   **WARNING**
   This policy does **NOT** provide liability insurance under any circumstances. To avoid penalties under Mexico's laws, **owner** should buy liability insurance from a company licensed in Mexico to sell it when taking the covered **property** to Mexico.

**PHYSICAL DAMAGE INSURANCE**
A. **WE WILL PAY:**
   1. **We** will pay for **loss** to covered **property** prior to repossession or abandonment to the lienholder, under:
      a. Comprehensive coverage:
         From any cause except the covered **property's** collision with another object or it's overturn.
      b. Collision coverage:
         Caused by the covered **property** colliding with another object or its overturn.
B. **WE WILL NOT COVER - EXCLUSIONS**
This insurance does not apply to:
   1. Consequential or indirect **loss**, loss of use, substitute transportation, nor general average and salvage charges.
   2. Wear and tear, freezing, mechanical or electrical breakdown unless caused by other **loss** covered by this policy.
   3. Blowouts, punctures or other road damages to tires unless caused by other **loss** covered by this policy.
   4. **Loss** caused by declared or undeclared war or insurrection or any of their consequences.
   5. **Loss** caused by the explosion of a nuclear weapon or its consequences.
   6. **Loss** caused by radioactive contamination.
   7. **Loss** to tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.
   8. **Loss** to tape decks, other sound reproducing equipment, or to any sound receiving equipment designed for use as a citizen's band radio, two-way mobile radio or telephone, or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the manufacturer for the installation of a radio.
   9. **Loss** due to infidelity, conversion, secretion, or embezzlement by **you**, the **owner**, or any other party, in lawful possession of the **property**; or confiscation of the **property** by any public official.
C. **HOW WE WILL PAY FOR LOSSES - THE MOST WE WILL PAY**
   1. At **our** option **we** may:
      a. Pay for, repair, or replace damaged or stolen **property**; or
      b. Return the stolen **property** at **our** expense. **We** will pay for any damage that results to the **property** from theft.
   2. The most we will pay for **loss** is the smaller of the following amounts:
      a. The actual cash value of the damaged or stolen **property** at the time of **loss**.
      b. The cost of repairing or replacing the damaged or stolen **property** with other of like kind or quality.
      c. The **outstanding balance** on the security agreement, at the **date of loss**; or
      d. The contract balance stated in this Certificate of Insurance; or



    e.   The proportion that the actual cash value of the damaged **property** bears to the actual cash value of all **property** described in this Certificate of Insurance as of the date of **loss**.

3.   For each covered **loss** to **property**, **our** obligation to pay for, repair, return, or replace damaged or stolen **property** will be reduced by the deductible shown in the Declarations as respects to the **owner** of the **property**.

## CONDITIONS

The insurance provided by this policy is subject to the following conditions:

**A.**  **OWNER'S** DUTIES AFTER **LOSS:**

    **Owner** must promptly:
1. Notify **us** or **our** agent of the **loss**; and
2. Tell **us** how, when, and where the **loss** happened; and
3. Assist in obtaining the names and addresses of any witnesses; and
4. Notify the police if the covered **property** or any of its equipment is stolen or vandalized.

**B.**  ADDITIONALLY, **OWNER** MUST:
1. Cooperate with **us** in the investigation, settlement, or the conduct of any suit. **Owner** shall not make settlement with others for **loss** to the **property**. **Owner** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.
2. Permit **us** to inspect and appraise the damaged **property** before its repair or disposition.
3. Do what is reasonably necessary after **loss** at **our** expense to protect the covered **property** from further **loss.**
4. Not, except at his expense, offer any reward, assume any other obligation or expense unless specifically authorized by **us.**
5. Submit a proof of **loss** when required by **us.**

**C.**  **OTHER INSURANCE**

For any covered **property you** or **owner** have, this policy only provides excess insurance over any other insurance in force. There shall be no basis for claim under this policy unless all other such insurance is exhausted with a payment less than that provided for under this policy. For purposes of this clause, any deductible provisions specified under any other insurance of $250 or less will not be reimbursed by **us.**

**D.**  **OUR RIGHT TO RECOVER FROM OTHERS**

If **we** make any payment, **we** are entitled to recover what **we** paid from other parties. Any person who we pay for **loss** must transfer to **us** their right of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that will jeopardize them. **We** will not exercise **our** right of recovery against any **owner** to which this policy applies.

**E.**  **CANCELLING THIS POLICY DURING THE POLICY PERIOD**
1. The lienholder may cancel the policy by returning it to **us** or by giving **us** written notice at least thirty days (30) prior to the date cancellation is to take effect.
2. **We** may cancel this policy by mailing or delivering to the lienholder at least thirty days (30) notice at the lienholder's last address known by **us**. Proof of mailing of any notice will be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy.
3. If this policy is cancelled, the lienholder or **owner** may be entitled to a premium refund. If so, **we** will send the lienholder the refund. However, making or offering to make the refund is not a condition of cancellation. If the lienholder or **owner** cancel, the refund, if any, will be computed in accordance with the short rate table in this policy. If **we** cancel, the refund, if any, will be computed in accordance with the pro-rata table in this policy.
4. Cancellation of this policy by either the lienholder or us will not affect Individual Policy Certificates issued on this policy, and they shall remain in force until otherwise terminated.
    a.  Any Individual Policy Certificate under this policy is automatically terminated, short rate - at **owner's** request, upon:
       (1) The effective date of other specific coverage secured in the name of the **owner** showing the lienholder as loss payee providing physical damage coverage on that **property**. Such **owner** may cancel this certificate by submitting to the lienholder and in turn to **us** the original of such a policy.
       (2) The payment in full of the credit extended on the **property** which established the lienholder's interest.
       (3) The repossession of the **property** by the lienholder or its abandonment to the lienholder by the **owner.**
    b.  Total Loss
       (1) Any Individual Policy Certificate under this policy is automatically terminated upon the **date of loss** for any total **loss** to **property** covered by that certificate.
       (2) In such an event, the earned premium for that certificate will be deducted from the **loss** payment.
    c.  **We** may cancel any Individual Policy Certificate issued under this policy by mailing to the lienholder and the **owner** at least thirty days (30) notice at the last addresses known by **us.**

**F.**  **LEGAL ACTION AGAINST US**

**No legal action may be brought against us until there has been full compliance with all terms of this policy.**

**G.**  **INSPECTION**

At **our** option, we may inspect **owner's property** and your property, operations, books and records at any time. These inspections are for **our** benefit only. By **our** right to inspect or by **our** making any inspection, we make no representations that **your** or **owner's property**, operations, or books and records are accurate, safe, or in compliance with any law, rule, regulation, security agreement, or this or any other insurance policy, or other contract, and are not harmful to health.

**H.**  **CHANGES**

This policy contains all the agreements between **owner** and **us**. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, **we** will adjust the premium as of the effective date of the change. If **we** revise this policy form to provide more coverage without additional premium charge, **owner's** policy will automatically provide the additional coverage as of the date the revision is affected in the State of Virginia.

**Owner** shall promptly notify **us** and **you** of any change in ownership or any transfer of interest in any of the **property** covered by this policy.

**I.**  **TRANSFER OF INTEREST IN THIS POLICY**

**Owner's** rights and duties under this policy may not be assigned without **our** written consent.

**J.   NO BENEFIT TO BAILEE**
  We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing, or transporting **property** for a fee regardless of any other provisions of this policy.

**K.   ABANDONMENT**
  There shall be no abandonment of any **property to us.**

**L.   BANKRUPTCY**
  Bankruptcy or insolvency of **you** or any **owner** shall not relieve **us** of any obligations under this policy.

**M.   APPRAISAL**
 1. If **owner** and **we** fail to agree as to the amount of **loss,** either may demand an appraisal of the **loss.** In such an event, **owner** and **we** shall each, within fifteen days (15), select an appraiser, and the appraisers shall, within ten days (10), select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and the amount of the **loss** and, failing to agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of the **loss. Owner** and **we** shall each pay the chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.
 2. **We** shall not be held to have waived any of **our** rights by any action relating to appraisal.

**N.   CONCEALMENT, FRAUD OR MISREPRESENTATION**
  **We** do not provide coverage for anyone who has, either before or after a **loss,** concealed or misrepresented any material fact or circumstance relating to this insurance

REFUND PERCENTAGE — SHORT RATE

| Time in force | Policy Term in months | | | |
|---|---|---|---|---|
| | 1-3 | 4-6 | 7-9 | 10-12 |
| 1 day | 95 | 95 | 95 | 95 |
| 2-3 days | 89 | 91 | 92 | 94 |
| 4-6 days | 84 | 88 | 89 | 92 |
| 7-9 days | 78 | 84 | 87 | 90 |
| 10-12 days | 73 | 81 | 84 | 88 |
| 13-16 days | 67 | 77 | 81 | 88 |
| 17-20 days | 61 | 74 | 78 | 84 |
| 21-23 days | 56 | 70 | 75 | 82 |
| 24-28 days | 50 | 67 | 73 | 80 |
| 29-34 days (1 mo) | 45 | 63 | 70 | 78 |
| 35-42 days | 39 | 60 | 67 | 75 |
| 43-49 days | 34 | 56 | 64 | 72 |
| 50-56 days | 28 | 53 | 62 | 69 |
| 57-64 days (2 mos) | 22 | 49 | 59 | 66 |
| 65-71 days | 17 | 46 | 56 | 63 |
| 72-79 days | 11 | 42 | 53 | 60 |
| 80-86 days | 6 | 39 | 50 | 57 |
| 87-94 days (3 mos) | 0 | 35 | 48 | 54 |
| 95-102 days | | 32 | 45 | 51 |
| 103-110 days | | 28 | 42 | 48 |
| 111-118 days | | 25 | 39 | 45 |
| 119-127 days (4 mos) | | 21 | 36 | 42 |
| 128-136 days | | 18 | 34 | 39 |
| 137-144 days | | 14 | 31 | 36 |
| 145-154 days (5 mos) | | 11 | 28 | 33 |
| 155-162 days | | 7 | 25 | 30 |
| 163-172 days | | 3 | 22 | 27 |
| 173-183 days (6 mos) | | 0 | 20 | 24 |
| 184-195 days | | | 17 | 21 |
| 196-208 days | | | 14 | 18 |
| 209-225 days (7 mos) | | | 11 | 15 |
| 226-238 days | | | 9 | 13 |
| 239-251 days (8 mos) | | | 6 | 11 |
| 252-265 days | | | 3 | 9 |
| 266-279 days (9 mos) | | | 0 | 7 |
| 280-295 days | | | | 5 |
| 296-317 days (10 mos) | | | | 3 |
| 318-350 days (11 mos) | | | | 1 |
| 351-365 days (12 mos) | | | | 0 |

NOTE: This SHORT RATE CANCELLATION TABLE will not apply if OPTIONAL PRO-RATA CANCELLATION ENDORSEMENT is attached to the master policy

Endorsement applicable to this Certificate of Insurance:

Amendatory Endorsement 32A08-45ED0011-E1215. **WORDS AND PHRASES WITH SPECIAL MEANINGS – READ THEM CAREFULLY,** item 7.(4) is replaced by the following: (4) Payments more than one hundred twenty (120) days past due.

**Coverage P. Worldwide Protection.** We agree the Policy is extended to include the following coverage.

WORLDWIDE
WHEN AND WHERE THIS POLICY APPLIES is broadened as follows: **We** also cover losses which occur during the Policy period: 4. Additionally, the Policy is extended to provide limited coverage elsewhere worldwide. It is understood and agreed that in the event of a **loss** of or damage to insured **property** while outside the United States the adjustment of the claim for such loss shall be made as soon as practicable. It is further expressed and understood that the cost of towing, transporting, salvage, or storage of any insured **property** outside the United States shall not be recoverable hereunder and not a contingency insured against. At **our** option the **loss** may be paid for in the United States. WARNING: this extension does not provide liability insurance under any circumstances. To avoid penalties under law, **owner** should buy liability insurance from a company licensed in that country to sell it when taking the covered **property** out of the United States, its territories, possessions, Puerto Rico or Canada.

